E. R. WILLIAMS, Receiver, *vs.* WILLIAM J. H. WAT-
TERS.

*Liability of Stockholders to Creditors of Corporation for Unpaid Sub-
scriptions—Act of Legislature Declaring Shares Non-Assessable
After Part Payment—Limitations—Power of Virginia Court to En-
force Stockholder's Liability—Entering Judgment After Overruling
Demurrer to Special Plea.*

When under the charter of a corporation and the law of the State of its
domicil stockholders are liable to the creditors of the corporation to
the amount of their unpaid subscriptions to the capital stock, an Act
of the Legislature declaring that shares of stock upon which half of
the subscription price had been paid should be deemed full paid and
non-assessable cannot operate to defeat the rights of then existing cred-
itors to enforce the liability of shareholders, but such statute is valid as
to creditors who became such after the passage of the Act.

The Statute of Limitations begins to run against a claim for subscriptions
to the capital stock of a corporation from the time when under the
charter and the resolution of the Board of Directors the subscriptions
are payable.

A Virginia statute provided that in the case of insolvent corporations the
Equity Court should direct the receiver to sue at law to recover assess-
ments made on the shares of stock and that the defendants should be
entitled to make the same defenses as if the corporation were solvent.
*Held*, that a decree of a Virginia Court establishing the indebtedness
of an insolvent corporation to a creditor and directing the receiver to
institute suits to recover unpaid subscriptions does not prevent a de-
fendant sued in this State by the receiver from setting up as a defense
that his liability on his subscription is barred by limitation or that the
creditor's claim upon which the decree was founded is not such as is
enforceable against stockholders.

A Virginia corporation directed the first instalment upon subscriptions to
its shares of stock to be paid on December 20th, 1890, and the subse-
quent instalments to be paid each sixty days thereafter until such pay-
ments should be declared unnecessary. After defendant, a stockholder,
had paid fifty per cent of the amount subscribed by him the corpora-
tion determined that the stock subscribed for could be paid by divi-
dends from earnings. The company also procured the passage of an
Act of the Virginia Legislature, in 1892, amending the charter and pro-
viding that the capital stock should not be liable for further assessment
after fifty per cent par value had been paid and that full paid certifi-

cates should be issued to those paying that amount, and that these certificate holders should not be liable for the debts of the company contracted after the passage of the Act. In 1893, a creditor of the corporation obtained a decree against it *pro confesso* for a debt. In 1898 an amended bill was filed under which a decree was passed in 1899, assessing the stockholders for the fifty per cent remaining unpaid on their original subscriptions, to satisfy this creditor's claim, and appointing a receiver to sue therefor. In 1897 an Act of the Virginia Legislature was passed which provided that a receiver appointed to collect assessments on the unpaid stock of insolvent corporations should sue at law to recover the same, and that the same defenses might be made to the suit as if the corporation were solvent. This Act was made to apply to pending suits when no final decree on the merits had been passed. In 1902, the said receiver brought suit in this State to recover defendant's unpaid subscription in excess of the fifty per cent paid as above mentioned. Defendant pleaded limitations, and also that the claim of the creditor against the corporation was for an indebtedness incurred by the latter after the passage of the Act of 1892, and with full knowledge thereof by the creditor. Upon demurrer to the pleas, *held,*

1st. That whether the claim of the creditor originated prior to the Act of 1892, or afterwards, the Statute of Limitations was a complete defense since the running of the statute against a demand for the amount subscribed was not arrested by the filing of the creditor's bill in 1893, as that did not seek to enforce the liability of stockholders, and there was no cause pending involving their liability until the filing of the amended bill in 1898, when the bar of the statute as to the subscriptions had completely attached.

2nd. That if the claim of the creditor against the corporation originated after the Act of 1892, and the creditor knew of this Act, then the defendant is not liable for the amount of his subscription above the fifty per cent already paid.

3rd. That under the Act of 1897, the defendant in this suit is entitled to make these defenses, and the decree of the Virginia Court in the creditor's suit does not conclusively establish his liability.

When a defendant files several pleas to a declaration containing a single count, and the plaintiff joins issue upon some of the pleas and demurs to others, then, if the demurrers are overruled. it is proper to enter final judgment for the defendant when the pleas so demurred to but held to be good constitute a complete bar to the plaintiff's right of recovery.

Appeal from Baltimore City Court (SHARP, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*J. Hanson Thomas* (with whom was *R. E. Lee Marshall* on the brief ), for the appellant.

The instalments on the subscription became due every sixty days after the first call by the directors. Consequently every sixty days after December 20th, 1890, an instalment became due without any action on the part of the company until the subscription was fully paid. The company could have maintained an action for any one of the instalments that had not been paid at any time within three years after the same became due. But when the company accepted the amendment to its charter and issued full paid certificates to its shareholders, then a new and different contract was made between the parties. After that time the corporation could not maintain an action nor could it call for the balance of the unpaid subscription, hence there was no liability on the part of the shareholder to the company for his balance of unpaid subscription. *Glenn* v. *Williams*, 60 Md. 93; *Scovill* v. *Thayer*, 105 U. 153.

After the defendant accepted his full-paid certificate, he was under no obligation to pay the balance due on his stock, unless it became necessary to satisfy the creditors of the company. The liability for the unpaid subscription did not arise until there had been a proceeding in Court to set aside the agreement, ascertain the amount to be raised necessary to satisfy the creditors and declare an assessment on the stock for the requisite amount. Consequently the Statute of Limitations did not begin to run until there was an unconditional liability on the part of the defendant for his unpaid subscription, which did not arise until September 20th, 1899, when the decree was passed on the amended and supplemental bill. This suit was brought within three years from the date of that decree, which was not denied by the defendant.

The Lexington Development Company was duly and regularly summoned to appear and answer both the original and amended and supplemental bills filed in the Circuit Court for Rockbridge County, Virginia. It failed to answer either bill and each of them was taken as confessed against it, and a decree entered in accordance with the prayer of the bill.

Every stockholder of the Lexington Development Company is bound by that decree as firmly as if he had been personally summoned to appear in the case and had been a party to the same. *Glenn* v. *Williams*, 60 Md. 93.

When the Virginia Court, after considering the amended and supplemental bill, decreed that the agreement between the stockholders and the Lexington Development Company was a fraud and void as against the claim of the Glasgow Manufacturing Company, and that an assessment of 50 per cent was necessary in order to satisfy the creditors. The stockholders are estopped from denying in a collateral proceeding any of the matters and facts that were necessarily found by the Court in order to establish the decree. The question of whether the Glasgow Manufacturing Company was a creditor prior to the passage of the amendment to the charter was as much before the Court, and as necessary to be determined as the fact of whether the Lexington Development Company really owed anything to the Glasgow Manufacturing Company. These matters are concluded as between the plaintiff and defendant in the suit and the only remedy for the stockholders is to have the decree of the Virginia Court annulled or set aside in a direct proceeding instituted for that purpose in the Virginia Court. *Upton* v. *Hainsborough*, 3 Biss. 417; *Castleman* v. *Templeman*, 87 Md. 547; *Great Western Tel. Co.* v. *Purdy*, 162 U. S. 336; *Furnald* v. *Glenn*, 56 Fed. 372; *Hawkins* v. *Glenn*, 131 U. S. 319; *Payson* v. *Stoever*, 2 Dill. 427; 3 *Thompson, Corporations*, sec. 3404.

Before the passage of the Act of 1897, the usual procedure in Virginia under a creditor's bill to recover unpaid subscriptions to the capital stock of a company was to make the stockholders, on whom service of process could be had, parties defendant with the company. After the amount of the assessment had been determined upon, a decree *in personam* was entered against each one of the defendant stockholders for the amount of his assessment. On this decree execution could issue and the stockholder could be compelled to pay. It was deemed wise by the Virginia Legislature to take away from a

Court of equity this power of entering a decree *"in personam"* against the stockholder for his unpaid subscription. The Act of December 22nd, 1897, was passed, which provided that in the future all unpaid subscriptions should be collected in the Court of law, and that where the amount involved was over $20, the defendant should have the right to a jury trial. Such was the purpose and object of the Act. The power was still left with the Courts of equity "to settle and wind up the affairs of insolvent corporations, *or to make assessments on unpaid stock subscriptions."* But the defendant claims that this Act allows him to plead in a suit brought by a receiver, on an assessment made by a Court of equity *which had authority to make the assessment,* matters of fact, which it was absolutely necessary that the equity Court had to pass on when it determined that an assessment was necessary.

There have been three decisions rendered by the Supreme Court of Virginia in reference to this Act, but none of them pass on the construction of the Act in regard to what defenses might be pleaded to a suit on an assessment made by a Court of equity. *Martin* v. *South Salem Land Co.,* 94 Va. 28; *Martin* v. *South Salem Land Co.,* 97 Va. 349; *Shickel* v. *Berryville Land Co.,* 99 Va. 88.

The appellant submits that the Act ought to be construed so as to allow a Court of equity the power to *"make the assessment."* That necessarily means that the Court must pass upon the question whether an assessment is needed. If it determines that one is needed, that fact cannot be inquired into collaterally, because the Court had the authority to *make the assessment.* The stockholder has the same right to set up any defense after the insolvency of the company on the *validity of his stock subscription* as he would have had before the insolvency of the company, except where the defense is an agreement not to assess the full face value. This provision was evidently put in the Act so as to enable a stockholder, who was sued by a receiver for the balance of his subscription, to plead and avoid his contract, *after insolvency,* on the ground of fraud and misrepresentation in procuring his subscription.

The defendant's sixth plea is very difficult to understand. It states that "there has been no final judgment or decree against this defendant or the said Lexington Development Company, on the merits of said claim made against it by said Glasgow Manufacturing Company, or on the merits of said assessment against this defendant, and that consequently this defendant is entitled to the benefit of said Act, (*i. e.*, Act of December 22nd, 1897), and is not liable to the plaintiff in this action."

There is nothing in the Act of 1897 that would permit the defendant to set up the fact that the claim of the Glasgow Company was not a just and proper claim and, surely, the Act does not allow the defendant to show that the assessment was not necessary when it distinctly says that Courts of equity shall have the power to make assessments the same as before the passage of the Act.

The seventh plea of the defendant is exactly the same as the sixth, with the exception that it alleges that the defendant, after the amendment to the charter, paid 50 per cent in full of his entire subscription, whereas in the sixth plea he alleged the Lexington Development Company entered into an agreement with him not to assess the face value of the stock.

*Randolph Barton* and *Redmond C. Stewart*, for the appellee·

It is apprehended that the main purpose of the appeal in this case is to test the question of the right of the appellee to go into the defenses outlined in the pleas. Undoubtedly, on the authority of the case which arose from the failure of the National Express and Transportation Company, the right of subscribers to make defenses was limited, upon the theory that when the company was sued and brought into Court all stockholders were in the suit by representation, and that any decrees against the company and any assessments made in such case were binding and conclusive upon stockholders, except in one or two distinct cases, such, for instance, as the defense of never having actually made the subscription or a payment. They submit that the Virginia Act of 1897,

entirely changes the situation regarding the rights of sub-
scribers.   By that Act not only is the right to make all de-
fenses left open to the individual subscribers, but the doctrine
of representation is entirely destroyed, and it is provided that
the Court ordering the assessment shall direct receivers to
bring suit at common law against subscribers.   Of course the
direction in the Act that such suits shall be brought in the
Courts of common law of Virginia is not in that particular op-
erative in Maryland ; but back of it rests the proposition that
jurisdiction of the equity Court to render a conclusive decree
against stockholders for unpaid subscription is ended ; in other
words, that the very Court in this instance which pronounced
the decree directing the assessment was incompetent to do
more than that.   The mode of recovery must be by a distinct
suit against the stockholders, wherein all defenses are open to
the stockholders.   The Act goes to the question of the juris-
diction of the equity Court making the assessment, and of
course if in the State of Virginia it had no such jurisdiction,
its powers are not enlarged from the necessity of suing such
subscribers in other States.

A Court of equity will not aid creditors of an insolvent
corporation to enforce satisfaction of their demands against its
stockholders where they have suffered a number of years to
lapse during which important changes have taken place with-
out attempting to enforce their rights.   The general reasons
which support the equitable doctrine of laches that after the
lapse of a considerable time parties naturally and justly act
upon the assumption that a state of things then existing will
not be disturbed.   The principal reasons for applying the doc-
trine is that when the creditor proceeds seasonably, the right
of subrogation which a creditor may have against the unex-
hausted but undiscovered assets of the corporation and the
right of contribution which he may have against other solvent
stockholders may be beneficial to him.   Whereas these rights
may be impaired or lost after a considerable lapse of time.
*Thompson on Corporations,* secs. 3773, 7842.   Creditor may
waive his right to look to stockholders.   *Basshor* v. *Forbes,*

36 Md. 154. Oral waiver. *Brown* v. *Eastern State Company,* 134 Mass. 590.

McSHERRY, C. J., delivered the opinion of the Court.

This suit was brought on the nineteenth day of September, 1902.

On the twentieth day of October, 1890, The Lexington Development Company, one of the numerous speculative ventures which sprang into existence in the State of Virginia about the same period, was incorporated in the Thirteenth Judicial District of that State under the general incorporation laws. By the terms of the prospectus issued by the company, and in accordance with which subscriptions to its capital stock were received, it was provided that the company would offer for sale sixty thousand shares of stock of the par value of ten dollars per share; one dollar per share to be paid at the time of subscription, one dollar per share upon the call of the board of directors and one dollar per share each sixty days thereafter until by a sale of the lots owned by the company such payments should be declared unnecessary by the board of directors. The appellee subscribed for fifty shares of the capital stock upon the terms just above set forth. On the eleventh of November, 1890, the board of directors adopted a resolution fixing December the twentieth, 1890, as the time for the payment of the second instalment of one dollar per share, and thereupon, according to the terms of the prospectus above alluded to, the subsequent instalments of one dollar per share became due and payable on February, April, June, August, October and December the twentieth, 1891, and February and April the twentieth, 1892. The appellee paid the several instalments due on his subscription up to and including August the twentieth, 1891, by which time he had paid fifty per cent of the amount subscribed by him. No other instalments were paid by the appellee and the sequel will show the reason. On the eighteenth of November, 1891, at a meeting of the stockholders of the company it was determined that the stock subscribed for could be finally paid

by dividends from the earnings of the company, and at the same meeting the solicitor for the company was instructed to secure from the Legislature of Virginia an amendment of the company's charter declaring the stock fully paid and non-assessable on the payment of fifty per cent thereof. On the ninth of January, 1892, the Legislature of Virginia enacted an amendment of the charter whereby, in effect, it was declared that the capital stock should not be liable for further assessments after fifty per cent of the par value thereof had been paid, and that upon the payment of fifty per cent of the stock then subscribed or that might thereafter be subscribed the Development Company should be authorized to issue full paid certificates for the par value of the stock to the subscribers; and it was distinctly declared that the holders of such certificates should not be liable for further assessments thereon for the debts or liabilities of the company contracted *after* the passage of that statute. The amendment of the charter was accepted by the company and in conformity to its terms a full paid certificate for fifty shares of capital stock was issued to and accepted by the appellee, which it is claimed was a new and materially modified contract of subscription in the place and stead of the original contract of subscription herein above set forth. The declaration avers that "as changed and modified said contract is a conditional contract to pay the balance remaining unpaid upon said defendants original contract of subscription only in the event of said balance being called for by the board of directors of said company for the purpose of discharging the debts or liabilities of said company contracted prior to the passage of said Act or subsequent to the passage of said Act and without notice thereof."

Right here is the pivotal point of the case as will appear a little later on.

On the nineteenth of January, 1893, after the occurrences thus far narrated had taken place, the Glasgow Manufacturing Company filed a creditor's bill against the Development Company in the Circuit Court for Rockbridge County in the State of Virginia, alleging that it was a creditor of the Develop-

ment Company to the extent of $19,356 and praying that the assets of the latter company be subjected to the payment of its debts; but it is not stated in the declaration filed in the pending case whether the Glasgow Company became such creditor *prior* or *subsequent* to the adoption of the statute of January the ninth, 1892, to which allusion has just above been made. The Development Company was duly summoned to appear and to answer that proceeding and upon failure to answer a decree *pro confesso* was entered against it whereby the amount of its indebtedness to the Glasgow Company was established. The proceedings seem to have then slumbered until 1898, when the Glasgow Company filed an amended bill in the same Court and alleged that all the tangible property of the Development Company had been sold and that nothing could be realized to pay the Glasgow Company's claim unless resort were had to the fifty per cent of the unpaid subscriptions which had never been called by the Development Company, and which was still due by the stockholders. The amended bill set forth that the stockholders claimed immunity from liability on account of the terms and provisions of the Virginia statute of January the ninth, 1892, and the action of the Board of Directors thereunder, which action, the bill alleged, was nugatory. On September the twentieth, 1899, a decree *pro confesso* was taken on the amended bill against the Development Company, and in the decree a call was made for the payment by the stockholders of the Development Company of the fifty per cent remaining unpaid upon their several subscriptions, and a receiver was appointed to sue for and collect such unpaid sums. Under that decree the pending suit was brought by the receiver to recover the unpaid fifty per cent of the appellee's original subscription. To the declaration which sets out in detail in a single count what has been in substance up to this point recited, the appellee interposed seven pleas and in addition quite a lengthy plea on equitable grounds. The first plea is the plea of the Statute of Limitations; the second and third are that the defendant never promised as alleged and that he was never indebted as alleged, and the others are quite lengthy

and need not be stated, except the seventh, inasmuch as we shall not have occasion to consider any of them other than it. By the seventh plea it is alleged that the Development Company had long prior to January, 1892, entered into a contract with the Glasgow Company for the building by the latter of an hotel for the former and that the Glasgow Company had proceeded with the execution of the contract until the latter part of 1891, when it stopped work on the hotel and received payment in full for all that had been done and all that was then due to it and abandoned its contract, the Lexington Company consenting thereto : That thereafter and *after* the adoption of the Virginia statute of January ninth, 1892, and *after* the appellee had fully paid up fifty per cent of his original subscription, the Glasgow Company, for whose sole use the pending suit was brought, with full knowledge of the Virginia Act of Assembly entered into a *new contract* with the Development Company to complete the hotel, and that any indebtedness that may be due by the Development Company to the Glasgow Company was incurred under that new contract. Upon the *second* and *third* pleas the plaintiff joined issue and to all the others he demurred. The Baltimore City Court overruled the demurrers and at once gave judgment for the defendant, the appellee, and from that judgment the receiver has appealed.

As there is but one count in the declaration there was no error in the Court's action in entering final judgment on overruling the demurrers, notwithstanding there were issues of fact joined on the *second* and *third* pleas, (*Boehm* v. *Mayor, &c., Balto.*, 61 Md. 259), unless the demurrers ought to have been sustained.

There are a number of interesting questions presented by the record and they were very admirably argued at the bar; but we do not find it necessary to go into a consideration of them for the reason that before they can be reached there are two defenses lying at the threshold and decisive of the controversy; and to them we will confine the few observations we feel called on to make.

If it be assumed, though it is not distinctly alleged in the declaration, that the Glasgow Company for whose sole use, according to the concessions of the demurrers to the pleas, the pending suit was brought, was a creditor of the Development Company *prior* to the adoption of the Virginia Act of January 9th, 1892, then it is obvious that that Act cannot impair the right of the creditor to pursue the stockholder. If the stockholder was liable to a subsisting creditor to the extent of the amount subscribed by the former then no enactment of the Legislature could interfere with that right, if the contract between the creditor and the company had been in fact made upon the faith of that liability. It would, then, result that so far forth as concerned the antecedent creditor the Act of January ninth, 1892, would be inoperative; and such in plain terms is the declared policy of the Act, for it specifically provides in its last clause that it shall have relation to debts or liabilities of the company contracted *after* the passage of the Act. On the assumption that the debt of the Glasgow Company was contracted *prior* · to January ninth, 1892, the Act of that date would have no efficacy. Having no efficacy the original charter of the company would control. Under that and the resolution of November eleventh, 1890, the instalments of stock were distinctly payable at intervals of sixty days, and as the last instalment was due on April the twentieth, 1892, it is obvious that much more than the statutory period of limitations elapsed between that date and the date of the bringing of this suit, and therefore the first plea of the appellee, relying on the bar of the statute, was a complete defense to the action. Nor did the filing of the bill by the Glasgow Company against the Development Company in January, 1893, arrest the running of the statute, for it is not averred in the declaration that that proceeding sought to subject to any liability the stockholders who had paid fifty per cent of their subscriptions, or that it sought to recover from them any part of the unpaid fifty per cent, and therefore there was no cause pending which involved a demand for the unpaid fifty per cent until the amended bill was filed in August, 1898,

when the bar of the statute as respects the original instalments had completely attached. The proviso to the Virginia Act of December 22nd, 1897, does not rescue the suit from the bar of the Statute of Limitations. That Act will be found set out later on in the margin. It is declared in the proviso that where chancery suits are pending at the time of the passage of the Act, *in which it is sought to recover unpaid stock subscriptions*, the Statute of Limitations shall not run as to any alleged subscription during the time which shall have elapsed between the institution of such suit and one month after an order shall have been entered authorizing a common law action as provided in the Act for the recovery of such a subscription. As just above observed there was no chancery suit pending for the recovery of the unpaid fifty per cent of the stock subscriptions when the Act of December the twenty-second, 1897, was passed nor until the amended bill was filed in August, 1898, and therefore the saving in the proviso has no application.

If, however, it be true that the claim of the Glasgow Company originated *after* the adoption of the Act of January ninth, 1892, and that the Glasgow Company knew of that Act as the *seventh* plea alleges and the demurrer thereto admits, then it is obvious that the claim must be treated as having arisen in subordination to the terms of that enactment; and, inasmuch as the appellee had fully paid in fifty per cent of his subscription, the creditor must be held to have entered into its contract with the Development Company upon the basis that stockholders who had in fact paid fifty per cent of their subscriptions would not be liable to pay more. Therefore, the creditor cannot repudiate the provisions of the Act and claim that the stockholder shall be required to pay that which he was not liable to pay when the contract between the company and the creditor was entered into. The decree of the Chancery Court must be read in the light of these circumstances and restricted in its application by them.

Under the case of *Glenn* v. *Williams*, 60 Md. 93, the questions we have been considering might be regarded as closed

were it not for the Virginia statute of December twenty-second, 1897, which is set out in the pleas and thus brought before us. It will be found in the margin.* By that statute it is enacted that all suits for the recovery of unpaid subscriptions to the stock of any joint stock company shall be brought in the Courts of common law, and that said Courts shall have exclusive jurisdiction to hear and determine questions involving the validity of such subscriptions : That in all cases where it shall be necessary to resort to a Court of equity to settle and wind up the affairs of insolvent corporations or to make as-

---

*Act of the General Assembly of the State of Virginia Passed December 22nd, 1897.*

All suits or motions for the recovery of unpaid subscriptions to the stock of any joint stock company shall be brought in the Courts of common law of this Commonwealth in the county or corporation where the defendant resides, if he be a resident of this State, or in the case of a joint or partnership subscription, then in the county or corporation in this State in which either of the joint subscribers or any member of the partnership subscribing shall reside ; and said Courts shall have exclusive jurisdiction to hear and determine all questions involving the validity of such subscriptions, but nothing herein contained shall be construed to deprive Courts of Chancery of their jurisdiction to settle and wind up the affairs of insolvent corporations or to make assessments on unpaid stock subscriptions.

In all cases where it is necessary to resort to a Court of equity for the purposes aforesaid, the Courts shall direct the trustee, assignee or receiver, as the case may be, to sue at law when necessary to recover any call or assessment, and the defendant shall be entitled to a jury where the amount involved exceeds twenty dollars, and suits shall be governed in all respects by the provision of this Act.

All pleas, defenses and evidence which would be admissible if the company were solvent shall be equally admissible and shall have the same effect in law in any action brought after insolvency of any such company (except where the defense relied upon is an agreement on the part of the corporation not to assess the face value of the stock subscribed and such an agreement was unknown to the creditor at the date of his contract), and this Act shall apply to all suits heretofore or hereafter brought where no final judgment or decree on the merits has been rendered ; provided that where chancery suits are pending at the time of the passage of this Act, in which it is sought to recover unpaid stock subscriptions, the statute of limitations shall not run as to any alleged subscriptions during the time which shall have elapsed between the institution of such suit and one month after an order shall have been entered authorizing a common law action as provided in this Act for the recovery of such a subscription.

sessments on unpaid stock subscriptions, the Courts shall direct the trustee, assignee or receiver to sue at law to recover any call or assessment and that the defendant shall be entitled to a jury trial : That all pleas, defenses and evidence which would be admissible if the company were solvent shall be equally admissible and shall have the same effect in law in any action brought after insolvency ; and that the Act shall apply to all suits heretofore or hereafter brought where no final judgment or decree on the merits has been rendered. The purpose of the enactment was to do away with the doctrine that the corporation represented the shareholders. The Chancery Courts of Virginia are by the Act stripped of the power they formerly possessed and whilst they are still permitted to make assessments the receiver is required to bring suit in a Court of law to recover and the decree fixing the assessments has, in cases to which the Act applies, no longer the conclusiveness and force attributed to it heretofore. The utmost which a Virginia Chancery Court can now do is to order an assessment, but when ordered the decree so ordering it can only be enforced by a suit at law, in which suit all defenses as to the validity of the subscription, and, therefore, as to the liability of the subscriber, are open to inquiry if the amount in controversy exceeds twenty dollars. If the Act limits the conclusiveness of the Virginia equity Courts' decree, that decree can have no greater force in Maryland than it would have in the State where it was passed ; and as in the latter it would not preclude the stockholder from setting up the defenses here interposed, so neither can it be invoked to prevent the same defenses from being relied on in our Courts; for the very manifest reason that the Act goes to the jurisdiction of the Virginia Courts to pass a final decree binding the stockholders by representation. If such a decree under the terms of the Virginia statute be not final there, it cannot be final here, for the decree can have no greater effect here than it has in the jurisdiction where it was rendered.

Without considering the demurrers to the other pleas, we are of opinion that the rulings in respect to the demurrers to

the *first* and *seventh* pleas were correct and the judgment must, therefore, be affirmed.

> *Judgment affirmed with costs above and below.*

(Decided April 1st, 1903 )