HOUSTON OIL CO. OF TEXAS v. BROWN.
(No. 281.)

(Court of Civil Appeals of Texas. Beaumont.
Dec. 28, 1917. Rehearing Denied
April 3, 1918.)

1. ADVERSE POSSESSION ⬤ᗏ114(2) — BOUND-
ARIES—SUFFICIENCY OF EVIDENCE.
Evidence *held* sufficient to support a finding
that plaintiff in trespass to try title, claiming
by adverse possession, had constructed her build-
ings within the boundaries of defendant's land.

2. BOUNDARIES ⬤ᗏ35(2) — SURVEYS — EVI-
DENCE.
Testimony of an old settler was admissible
to show that calls in a grant were consistent
with the footsteps of the surveyor.

3. BOUNDARIES ⬤ᗏ25—SURVEYS.
Senior surveys control junior surveys.

4. ADVERSE POSSESSION ⬤ᗏ68—POSSESSION.
Possession is adverse, within the statute,
although entry on land is made with no original
right, but only for the purpose of acquiring limi-
tation and making a home.

5. ADVERSE POSSESSION ⬤ᗏ45—APPOINTMENT
OF RECEIVER—EFFECT.
Appointment of a receiver for a corpora-
tion does not stop the running of limitations
against the corporation as to one holding land
of the corporation adversely.

6. ADVERSE POSSESSION ⬤ᗏ114(2)—EXTENT OF
CLAIM.
Evidence *held* not to show that one claiming
land adversely claimed only to specified bound-
aries, so as to render judgment for an undivided
160 acres erroneous.

7. TRIAL ⬤ᗏ133(2)—IMPROPER ARGUMENT.
Argument in trespass to try title, "Are
you going to allow the H. Oil Company of Tex-
as to move these lines where they want them
to be? If you do, there may come a time when
it will come and move your lines around your
lands"—although highly improper, was not re-
versible, where the jury was admonished, and
there was nothing to show it was influenced
thereby.

8. APPEAL AND ERROR ⬤ᗏ882(8)—HARMLESS
ERROR—EVIDENCE.
Where both sides introduced similar evi-
dence, without objection, one party cannot later
complain that the evidence was improper.

9. BOUNDARIES ⬤ᗏ35(1) — SURVEYS — EVI-
DENCE.
It was proper to testify where lines under
surveys were actually run upon the ground, and
where improvements were located with reference
to such lines.

10. TRIAL ⬤ᗏ244(1) — SUBMISSION OF ISSUES
—REQUESTED CHARGES.
Where the court gave all the material issues
in its charge, it was not error to refuse a spe-
cial charge that sought to single out and sub-
mit a question to the jury that was not con-
trolling.

11. ADVERSE POSSESSION ⬤ᗏ96—ISSUES—EX-
TENT OF POSSESSION.
In action where plaintiff claimed title to
160 acres of land by adverse possession, the
question of encroachment not being raised, the
distance plaintiff was on defendant's land was
immaterial.

Appeal from District Court, Tyler County;
W. R. Blackshear, Judge.

Trespass to try title by Mrs. M. J. Brown
against the Houston Oil Company of Texas.
Judgment for plaintiff, and defendant ap-
peals. Affirmed.

Kennerly, Williams, Lee & Hill, of Houston,
for appellant. Tom F. Coleman and Thomas
& Wheat, all of Woodville, for appellee.

BROOKE, J. The appellee instituted this
action in trespass to try title against the
appellant to recover an undivided 160 acres
out of the M. L. Abbott 960-acre survey, in
Tyler county. Her claim of title was under
the 10-years statute of limitations. Appel-
lant pleaded not guilty, and, by way of cross-
action, asked for judgment against appellee
for all of the Abbott survey.

On the trial of the case it was agreed that
the appellant owned the title to all of the
Abbott survey, unless the appellee had ac-
quired title to a part thereof under the 10-
years statute of limitations. After refusing
to peremptorily instruct the jury to return
a verdict in favor of the appellant, the court,
over appellant's objections, submitted the
case to the jury on the following issues:

First. Has the plaintiff, Mrs. M. J. Brown,
had peaceable and adverse possession of the
property in controversy, cultivating, using, and
enjoying the same for at least a period of ten
years prior to the filing of her suit, as against
all parties whomsoever? The jury answered
this question, "Yes."

Second. Is the plaintiff's (Mrs. M. J. Brown's)
dwelling house, crib, garden, chicken house, and
the five acres in field abandoned by her some
two years ago, located on the Andrew Dikes
survey or on the M. L. Abbott survey? The
jury answered, "On the Abbott."

Third. Was the possession, cultivation, and
use, if any, of the land covered by plaintiff's
improvements, if any, sufficient, under all the
facts and circumstances in evidence before you,
to constitute notice to the defendant that the
plaintiff was claiming 160 acres of land out of
the M. L. Abbott survey? The jury answered
this question, "Yes."

Fourth. If you have answered the foregoing
question "No," then you will not answer the
following question; but if you answer the fore-
going question "Yes," then you will state what
160 acres of land plaintiff's possession, culti-
vation, and use, if any, under all the facts and
circumstances of this case, gave notice of her
claim to the defendant. The jury answered
this by stating, "That part of the M. L. Abbott's
survey including Mrs. Brown's improvements."

Before the court's main charge was read
to the jury, the appellant duly objected and
excepted thereto. The appellant duly request-
ed the court to peremptorily instruct the jury
to return a verdict in its favor, and asked
other special charges, which charges the
court refused. The appellant filed its formal
motion to set aside the verdict of the jury
and for a new trial. Thereafter, on motion of
the plaintiff, the court rendered judgment in
her favor for an undivided 160 acres of the
Abbott survey, and appointed commissioners
to effect a partition thereof. Thereafter the
appellant duly filed its amended motion to
set aside the verdict and judgment, and for
new trial, and to the action of the court in
overruling this motion the appellant duly
excepted and gave notice of appeal, and
thereafter in due time filed its appeal bond
superseding the judgment of the trial court.

On the trial of this case the appellee en-
deavored to show that her improvements
were on the M. L. Abbott survey, and that
her possession had been of such nature that

she had acquired title to an undivided 160 acres including her improvements. The appellant, however, insisted that the improvements of the appellee were not on the Abbott survey, but were on the Andrew Dikes survey, of which the appellee was admittedly the owner; and that, regardless of whether her improvements were on the Abbott or on the Dikes, or on that part of the Abbott covered by the junior Dikes survey, the character of the possession of the appellee was wholly insufficient to entitle her to an undivided 160 acres out of the Abbott.

The appellant contends that the judgment of the trial court should be reversed for the following reasons:

(1) The undisputed facts in this case show that the improvements of the appellee were not on any part of the M. L. Abbott survey, of which the appellant is admittedly the record owner, so that this case for this reason should be reversed and rendered.

(2) The most that can be said for appellee is that her improvements were on that part of the Dikes survey owned by her conflicting with a part of the M. L. Abbott survey, so that appellee can recover no more of the Abbott survey than that small part of it covered by the Dikes.

(3) Under the undisputed facts, the appellee did not show any title under the 10-years statute of limitations, and this case should be reversed and rendered, because: (a) Appellee's possession was not adverse, within the meaning of the statute, in that she expressly admitted that she had no claim of right to the land, but went on it purely for the purpose of acquiring 160 acres under the 10-years statute of limitations; (b) appellee sued for and the judgment awarded her an undivided 160 acres out of the entire Abbott survey, while she expressly admitted that she claimed 160 acres out of a definite part of the Abbott survey, her claim not being to an undivided interest in the whole survey, as alleged in her petition; (c) as the United State Circuit Court at Houston, through its receiver, from March, 1904, until April, 1909, was in possession and control of the Abbott survey, and was vested with the title thereto, the appellant having no title or authority with reference to said property, and as all the parties by said court were enjoined from interfering with its possession, the appellee's occupancy, which began in August after the court took possession of said property in March, was not sufficient to constitute adverse possession, the property being in custodia legis.

(4) On the trial of the case, over the objections of the appellant, witnesses for the appellee were permitted to testify and to give in evidence their opinions and conclusions with reference to the location of the west line of the M. L. Abbott survey, the east line of the A. Dikes survey, and other material lines as well as corners, the locations of which were contested, so that this case should, at least, be reversed and remanded because of the admission of such improper evidence before the jury.

(5) The counsel for the appellee made harmful and improper argument to the jury, telling them that, if they located the lines as claimed by appellant, "there may come a time when it will come and move your lines around your land," which argument alone would require this case to be reversed and remanded.

The first assignment is as follows:

"The court erred in failing and refusing to peremptorily instruct the jury to return a verdict in favor of the defendant, the defendant being the admitted owner of the land, unless plaintiff has acquired title under the ten-years statute of limitations, plaintiff having wholly failed to show any title to the land or any part thereof."

The propositions under this assignment are:

(a) "It was error for the court to refuse to peremptorily instruct the jury as requested, for under the undisputed evidence, as a matter of law, it was shown that none of appellee's improvements were on the Abbott survey, the land in controversy; so that appellee showed no possession of the land, it having been agreed that the appellant owned the land unless appellee had acquired title under the ten-years statute of limitations."

(b) "It was error for the court to refuse to peremptorily instruct the jury as requested, for under the undisputed evidence, as a matter of law, it was shown that the appellee's improvements were on the Andrew Dikes survey, owned by her, and not on the Abbott survey; so that appellee showed no possession of the land in controversy, and appellant was therefore entitled to judgment, as it was agreed that appellant owned the record title to the Abbott survey, and that appellee to show title relied solely on the ten-years statute of limitations."

(c) "As the undisputed evidence showed that the west line of the Abbott survey had a fixed location, according to its field notes, east of appellee's improvements, and as the undisputed evidence showed that the Dikes east line was definitely located by its own field notes east of appellee's improvements, such showed that appellee had had no possession of the Abbott survey as required under the ten-years statute of limitations to acquire title, so that the court erred in refusing to peremptorily instruct the jury as requested."

(d) "As the field notes of the Abbott and Dikes surveys call for corners and lines of surrounding surveys, and contain no inconsistent calls, it is not admissible to show by parol evidence that a different survey was in fact made for the purpose of controlling the calls in the grants."

(e) "As the calls in the field notes of the Abbott and Dikes surveys, when applied to the land, correspond with each other, parol evidence was not admissible to vary them by showing that in point of fact they were not the calls of the survey as actually made."

(f) "As there was no conflict in the calls in the field notes of the Abbott and Dikes surveys, there was no room for construction, and the calls must speak for themselves, for to permit the introduction of parol evidence to vary such calls would be to violate the familiar rule that extraneous evidence is not permissible to vary a written instrument."

(g) "Where field notes call for certain known and established monuments and boundaries, they may not be controlled by parol proof of a survey entirely inconsistent with and repugnant to the calls of the grant."

On the contrary, it is contended that the location of a survey on the ground, or footsteps of the surveyor, control all classes of calls, and that the verdict of the jury finding that Mrs. Brown resides upon the M. L. Abbott survey, there being evidence to support their verdict, is conclusive on appeal; and also that the proof amply supports the verdict that Mrs. M. J. Brown's improvements were on the M. L. Abbott survey, they being east of the Abbott and Dikes common division line, and such verdict ought to remain undisturbed.

EXHIBIT 23

RED INDICATED BY HEAVY LINE.
YELLOW INDICATED THUS: ●━●━●

EXHIBIT 24      T. M. HYDE'S MAP FOR MRS. BROWN.

The field notes of the Dikes survey are as follows:

"The State of Texas, County of Tyler.

"Corrected field notes of a corrected pre-emption survey of (160) one hundred and sixty acres of public land made Andrew Dikes, it being the quantity of land to which he is entitled by virtue of his affidavit & designation (corrected) made according to an act of the Legislature approved Aug. 12, 1870, granting pre-emption to settlers; said survey is situated in Tyler county, on the waters of the Neches river, about 17 miles N. 24 deg. E., from Woodville. Beginning 400 vrs. W. from the N. E. cor. of R. Gregory's survey of 320 acres and on N. line of same, which is a S. W. cor. of a survey of about 900 acres made for Martin L. Abbott, the same being the S. E. cor. of a survey made for R. L. K. McCartney (abandoned), a stake from which a pine 10 inches in diameter bears N., 30 deg. W., 4 vrs., and a pine 8 inches in diameter bears S., 55 deg. W., 4 vrs. (old bearings gone); thence N.. on W. line of Abbott's survey at 535 vrs., a post in a field; thence W., at 90 vrs., E. Dickerson's S. E. cor., continues W. on S. line of said Dickerson's at 910 vrs., large branch, and at 950 vrs. S. W. cor. of same, a stake from which a red oak brs. S., 76 deg. E., 3 vrs., and a white oak brs. N., 56 deg. W., 3 vrs.; thence N., on Dickerson's W. line, at 300 vrs., cor. stake, from which a magnolia brs. S. 9 deg. W., 6 vrs., and a dogwood S., 23 deg. W., 4 vrs., the same being a cor. the G. & B. Nav. Co. No. 41; thence W., on S. line of said survey, at 473 vrs., interior cor., a stake, from which hickory brs. N., 28 deg. E., 3 vrs., and a black gum brs. S., 14 deg. W., 6 vrs.; thence S., on E. line of same, at 835 vrs., another interior corner of said G. & B. Nav. Co. No. 41, a stake from which a post oak brs. N., 8 deg. W., 8 vrs., and a small post oak, 3 inches in diameter, brs. N., 80 deg. E., 3 vrs. (the old pine gone); thence E., on N. line of same, at 500 vrs., passed Gregory's N. W. corner, and at 1.425 vs., place of beginning. Bearings mark, X̱ & X̱.
    M

"Resurveyed and corrected for Andrew Dikes, April 20, 1888."

The field notes of the McCartney survey, which was surveyed prior to the Dikes survey, and which said survey is embraced entirely by the Dikes survey, are as follows:

"The State of Texas, County of Tyler.

"Field notes of a survey of (160) one hundred and sixty acres of land made for R. L. K. McKartney, it being the quantity of land to which he is entitled by virtue of an act approved February 13, 1854, granting pre-emption privileges to settlers said survey, is No. ——, in Tyler county, situated on the waters of the Neches river, about 14 miles north, 16 east of Woodville. Beginning four hundred varas west of the N. E. corner of a 320-acre survey made for R. Gregory at a stake from which a pine bears N., 76 E., 16 vs., and a black jack bs. S., 39 W., 9 vs.; thence north 535 varas, a stake from which a pine bs. S., 83 E., 14/10 vs., and a pine bs. S., 32 W., 2 vs.; thence west at 910 vrs. crossed a small creek, course north, at 950 varas stake from which a red oak bs. S., 76 E., 3 vs., and a white oak bs. N., 56 W., 3 vs.; thence north 300 vs. a corner stake, from which a magnolia bs. S., 9 W., 6 vs., and a dogwood bs. S., 23 W., 47/10 vs.; thence west 473 varas a stake, from which a hickory bs. N., 28 E., 2 varas and a black gum bs. S., 14 W., 6 vs.; thence south 835 varas to a stake from which a post oak bs. N., 8 W., 8 vs., and a pine bs. N., 59 E., 10 vs.; thence east, at 500 varas, the N. W. corner of said R. Gregory's survey, at 1,442 vs., the place of beginning.

"Bearings marked X M.
"Surveyed Augt. 25th, 1856."

The field notes of the Dickerson survey. which seems to have been surveyed on the same day as the Dikes survey, are as follows:

"Field notes of a survey of 160 (one hundred and sixty) acres of land made for Elizabeth Dickerson, it being the quantity of land to which she is entitled by virtue of an act approved Feb. 13 A. D. 1854, granting pre-emption privileges to settlers, said survey is No. ——, in Tyler county, on Tallents creek, a tributary of the Neches river, about 15½ miles north from Woodville. Beginning ninety varas west of the N. E. corner of a survey made for R. L. K. McKartney, at a stake from which a pine bears S., 3 deg. W., 20 vs., and another pine brs. S., 86 deg. 30' E., 30 vs.; thence west, with the N. line of said McKartney's survey, 860 varas to his N. W. corner, from which a red oak brs. S., 76 deg. E., 3 vrs., and a white oak brs. N., 56 deg. W., 3 vs.; thence north, at 370 vs., crossed Tallents creek, 3 vs. wide, course north on this line crossed said creek 16 times, at 1,050 varas, a stake, from which a pine brs. S., 3 W. 3 vs., and a sweet gum brs. N., 62 deg. W., 1 vs.; thence east 860 varas to a stake, from which a pine brs. S., 36 deg. E., 3⁵/₁₀ vs., and a pine brs. S., 56 deg. E., 14 vs.; thence south 1,050 varas to the place of beginning. Bearings marked X̱. Surveyed August 25, 1856."

The field notes of the R. Gregory survey, dated August 20, 1847, being the oldest survey of all the surveys mentioned, are as follows:

"About 13½ miles N., 17 E., from Woodville. "State of Texas, District of Liberty.

"Survey for Richard Gregory of 320 acres of land situated in Tyler county, on the waters of Neches river, about 6 miles W. from Theuvenon's bluff on said river, being the amt. of land to which he is entitled by virtue of certificate No. 1575, county court No. 189, issued by the board of land com'rs for San Augustine county. Beginning at a stake 3,845 varas N., 62 west, from the southwest corner of a survey made for William Pamplin, from which a hickry mkd. X bs. N., 72 E., 5 vrs., and a pine mkd. X brs. N., 3 vrs.; thence north 1,344 varas to a stake, from which a blk. oak marked X brs. S., 45 E., 5 varas, and a post oak marked X bears N. 1 varas; thence east 1,344 varas to a stake, from which a pine marked X bears south, 20 E., 2 varas and a black jack marked X bears N., 60 W., 6 varas; thence south 1,344 varas to a stake, from which a pine marked X bears south, 70 west, 5 varas, and a pine marked R bears E. 9 varas; thence west 1,344 varas to the beginning.

"Surveyed 20th day of August, 1847." ·

The field notes of the M. L. Abbott survey are as follows:

"Beginning on the E. line of a 320-acre sur. for R. Gregory, at the N. W. cor. of sec. No. 44, G. & G. N. Co., a stake, a pine brs. N. 4 vrs., do. W. 3½ vrs.; thence E., on N. line of sec. No. 44, at 1,402 vrs., to its N. E. cor., and N. W. cor. of sec. No. 45, at 1,467 vrs., S. W. cor. of sec. No. 46, G. & B. N. Co., a stake, a pine brs. S., 48 deg. E., 10 vrs., do. N., 45 deg. E., 10 vrs.; thence N. with the W. line of sec. 46, at 2,009 vrs., N. W. cor. of same, a stake, a pine brs. S., 6 deg. E., 3½ vrs., do. S., 70 deg. W. 17 vrs.; thence E., at 298 vrs., S. W. cor. of sec. No. 49, G. & B. N. Co., a stake, a pine brs. N. 62 deg. W., 11½ vrs., do. S. 6½ vrs.; thence N., at 1,352 vrs., in W. line of No. 49, cor. stake, a pine brs. S., 25 deg. W., 7 vrs.; do. N., 15 deg. E., 9 vrs.; thence W., at 270 vrs., road at 606 vrs., E. line of a pre. survey for Wm. Payne, a stake, a pine brs. N., 47 E., 4 vrs., do. N., 23 W.; thence S., on Payne's E. line, at 595 vrs., S. E. cor. of same, a stake, a pine 16 vrs. brs. S. 85 W., 10 vrs., do. 22 ins.,

brs. N., 25 deg. W., 11 vrs.; thence W. on S. line of same, at 590 vrs., E. line of a pre. sur. for Jas. Abbott, a cor. stake on large branch C. N. E., at sweet gum, brs. N. 7 vrs., a beech 10 ins. brs. S., 58 W., 9 vrs.; thence S., at 55 vrs., large branch, at 215 vrs., Abbott's S. W. cor., a stake, a pine brs. N., 37 deg. E., 10½ vrs., do. S., 23 deg. E., 10½ vrs.; thence W., at 60 vrs., branch at 710 vrs., cor. stake on Jas. Abbott's S. line, at pine, brs. S., 20 E., 7 vrs., do. B. 67 E. 6 vrs.; thence S., at 1,356 vrs., N. E. cor. of a pre. sur. for Andrew Dikes, at 1,996 vrs., Dikes' S. E. cor., on N. line of R. Gregory's sur., a stake, a pine 20 ins. brs. 13 vrs., do. 18 ins. N., 41 deg. W., 12 vrs.; thence E., at 400 vrs., Gregory's N. E. cor., stake, pine brs. S., 20 deg. E., 2 vrs., a B. J. N., 10 deg. W. 6 vrs.; thence S., at 555 vrs., the place of beginning, bearings mks. X̅."

In addition to the field notes of the Andrew Dikes survey, as per the calls therein, the appellant produced a witness, T. M. Hyde, who testified that he knew the plat marked Exhibit 23 in this opinion; that he begins at point 27, thence south to point 30, thence east to point 31, the southeast corner of R. Gregory, at an identified corner, thence north to point 20, there found stump, the northeast corner of Gregory; taking this identity of the Gregory, the oldest survey, then running west 400 varas, as called for by all the field notes, we locate the southeast corner of the Dikes at the point contended for by appellee. He further testified that using the plat marked Exhibit 24 in this opinion, which shows the old corners and established R. Gregory survey, and taking the northeast corner as thus established, about which there seems to be no dispute in this record, and then running west 400 varas, as called for by all of the surveys and by the field notes of A. Dikes, the point is located as the southwest corner of Dikes, as contended for by appellees. Mr. Hyde further testified that the R. Gregory survey is located as shown in Exhibit 24, and by black lines in Exhibit 23, and that to run from its northeast corner west 400 varas, as called for in the field notes of the Dikes' and Abbott's, to a corner, then running north as called for, the east line of Dikes and west line of Abbott, an identical or common line, is west of Mrs. Brown's place, and throws her improvements all on the Abbott. He says, further, that the red and yellow lines indicated by him in Exhibit 24 could not have been run in 1856, or even as long ago as 1888, but the red lines are new lines. That the yellow lines are imaginary.

Without setting out in detail, it is sufficient to say that the Dickerson survey is a junior survey; that appellee introduced a witness, W. H. Worthy, who testified as follows:

"I owned part of the Gregory and Dickerson surveys. I was present when John McBride, surveyor, was making the original field notes of the Andrew Dikes, and establishing corners of Dikes' on the R. Gregory, that was the southeast corner of the Dikes. In running north from that southeast corner made by John McBride, Mrs. Brown's place would be to the east of such line on the M. L. Abbott survey. McBride surveyed for Dikes, on which he got his patent, it was in 70's, and since called Dikes' survey (before that called McKartney survey). McBride then run north and located the northeast corner of Dikes,' Mrs. Brown's place, east of this line. McBride ran that line for Andrew Dikes; he run it out to establish his corners.

"I carried the chain when Mr. Hyde surveyed it, and from the northeast corner of Gregory to southeast corner of Dikes, 400 yards, and a stump is there at the place McBride made the southeast corner of Dikes. I didn't know the stumps as trees were cut. But I knew it was right there. I had seen it put there. I was present when J. P. Mettauer, Mr. Hinman, and a surveyor from Kountze run the lines of Abbott, Gregory, and Dikes. They run the line of Abbott and Dikes west of Mrs. Brown's place. I was there assisting in the work. My wife heired one-half of Gregory. Her father was R. Gregory."

Mrs. Brown, the appellee, testified for herself.

"I know where the old original line is (of Dikes and Abbott); it is west of my house."

She further testified that she knew all the time she was on the Abbott, erected her present home thereon, garden, outhouses, and other improvements, and her husband's farm he left her was already thereon.

[1] Therefore, in our opinion, the testimony is sufficient and ample to support the verdict of the jury in so far as that is called in question by the assignment, and shows why one of the parties, as above set out, who was on the ground at the time the original survey was made, and when the southeast corner of the Dikes survey was placed there, that the same was at the point contended for by the appellees. It is further shown that all the old lines, up to three or four years ago, together with the testimony of the oldest inhabitants who knew the same, to know where the said corner was situated, that the said corner was originally located at the point contended for by the appellee; and it is further shown that the new lines, as shown in Exhibit 24, were by all the witnesses and testimony, perhaps, shown to have been made within the past three or four years, and were not old lines. The parol testimony offered to show that the oldest inhabitants knew of the original line called for in the Dikes field notes, beginning with Mr. Worthy, who was present and testified exactly where the southeast corner of the Dikes was made upon the ground, seems to coincide with the testimony and the calls of the grant of the Dikes survey; that the original surveyor, by his footsteps and his work, placed upon the ground the line as contended for by the appellee; and, as has been above stated, the said calls are not inconsistent with, but followed, the calls in the grant.

[2] We are of opinion that the testimony along this line was admissible, not for the purpose of contradicting, but showing that the calls in the grant were consistent with the footsteps of the surveyor, as he ran the

line upon the ground. The northeast corner of the Richard Gregory seems to have been clearly established, and practically is without dispute. Taking that as a basis, all the grants; and especially the grant of the Dikes, call to begin at the northeast corner of the Richard Gregory, and run from thence 400 varas, and fix the southeast corner of the Dikes at this point. We are of opinion that this record bears out clearly that the verdict, as found by the jury, is, in fact, correct, and does fix the southeast corner of the Andrew Dikes survey to be at the place contended for by appellee.

[3] This comports with the universal rule that senior surveys control junior surveys, and we think this record shows that the east line of the Dikes is a common line with the west line of the Abbott, and that it was so placed there by the original surveyors. Believing as we do, the assignment is overruled. Fulton v. Frandolig, 63 Tex. 330; Converse v. Langshaw, 81 Tex. 275, 16 S. W. 1031; Jones v. Burkitt, 150 S. W. 275; Oliver v. Mahoney, 61 Tex. 610; McAninch v. Freeman, 69 Tex. 447, 4 S. W. 369; Moore v. Reiley, 68 Tex. 670, 5 S. W. 618; Sloan v. King, 33 Tex. Civ. App. 542, 77 S. W. 50; Shelton v. Bone, 26 S. W. 225; Busk v. Manghum, 37 S. W. 461; Goodrich v. West Lbr. Co., 182 S. W. 348; Chesson v. La Flore, 191 S. W. 745; Polk v. Reinhard, 193 S. W. 690; Hughes v. Hughes, 191 S. W. 743; Stark v. Brown, 193 S. W. 718.

[4] In this connection it might be well to say, with reference to the contention that the appellee had no claim of right to the land, but entered upon the land purely for the purpose of acquiring limitation, without claim of ownership of right, and therefore her possession is not adverse, under the statute, that the Chief Justice of our Supreme Court has recently handed down an opinion touching the Stevens v. Pedregon Case in 106 Tex. 576, 173 S. W. 210, in which he uses the following language:

"It is urged that there was no proof that D. M. Jones had any claim to the land when he entered upon it, and none that his occupancy was continued under any claim other than an intention to hold the land as a home. For this reason it is contended that his possession was not adverse within the meaning of the statute, because not commenced and continued under 'a claim of right.' Stevens v. Pedregon, 106 Tex. 576 [173 S. W. 210], is relied upon in support of this proposition.

"The statute defining 'adverse possession,' article 5681, is as follows: 'Adverse possession is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.'

"While the requirement that the appropriation of the land must be commenced and continued 'under a claim of right inconsistent with and hostile to the claim of another' was first incorporated in the statute in 1879, at an early day this court announced that such claim was an essential element of adverse possession. Portis v. Hill, 3 Tex. 273. The present statutory definition of 'adverse possession,' in a word, is simply that which the court had always held

it to mean, and as other authorities generally had defined it. For instance, it was said by Judge Moore in Word v. Drouthett, 44 Tex. 365, decided in 1875: 'His entry upon the land must be with intent to claim it as his own or hold it for himself; or his intention to do so, if conceived after going into possession for some other purpose, must be manifested by some open or visible act or declaration showing such purpose, in order to set the statute in motion in his favor. Wash. on Real Prop. 125; 2 Smith's Lead. Cases, 561.'

"The court has a number of times declared that a naked trespasser may acquire a limitation title to land under the ten-years statute. Smith v. Jones, 103 Tex. 632 [132 S. W. 469, 31 L. R. A. (N. S.) 153], Craig v. Cartwright, 65 Tex. 413, and Word v. Drouthett are among the decisions so holding.

"It was not the purpose of Stevens v. Pedregon to overrule this established holding of the court, though there is an expression in Chief Justice Brown's opinion that is to some extent confusing.

"The 'claim of right' to which the statute refers simply means that the entry of the limitation claimant must be with the intent to claim the land as his own, to hold it for himself, and such must continue to be the nature of his possession. That it is necessary that his entry upon or holding of the land be founded upon his having some character of title is opposed to the theory of the ten-years limitation statute." Houston Oil Co. of Texas v. H. C. Jones et al., 198 S. W. 290.

With reference also to the ninth proposition under the first assignment, in which it is contended that the M. L. Abbott survey was from March, 1904, until April, 1909, in the possession and control of the United States Circuit Court at Houston, Tex., and its receiver, which court enjoined all parties from interfering with its possession, so that limitation could not begin to run until the property passed from the control of the court, in April, 1909, even if appellee's occupancy was of the Abbott survey, that the peremptory instruction should have been given, and that as the Abbott survey was in custodia legis from March, 1904, until April, 1909, and as the appellant and all other parties were restrained from interfering with possession of the court, limitation did not begin to run against appellant in favor of appellee until after the control of the court over such property ceased, even if appellee was on said survey; it is contended by appellee, on the other hand, that the appointment of a receiver does not in any way affect the running of the statute of limitation, for the mere appointment of a receiver does not suspend the right of action against the corporation or its receiver to bring suit for a recovery of its property, unless the proceeding in which the receiver is appointed has resulted in dissolving the corporation, or seeks a judicial dissolution, and the court enjoins the prosecution of any action, and that the reason the rule exists is that the existence of the corporation is not destroyed, or even suspended, by reason of the property or franchises being held in custody of a court of equity. It is further contended that the receiver's relations with the corpo-

ration and its property are substantially those of a trustee, and limitations are uniformly held to run against the property or action held by a trustee and to bar the beneficiary. It is further contended that, even though a receiver has been appointed, the company may, by leave of the court, sue to recover property in its own name against any one except the receiver; and, further, that, where there is some one in esse who can bring the suit, the statute of limitation will run, and it is undeniable that the receivers could have brought an action; the same principles apply as of executors and administrators who are vested with the property even of a minor. It is further argued that no disabilities intervened because of the appointment of receivers for the Houston Oil Company of Texas, for the suit did not dissolve the corporation, nor was its dissolution sought, and no injunction restraining interference, by suits or otherwise, as against the company.

It seems that paragraph 11 of the order appointing a receiver vests them with all property of the company, and paragraph 15 of said order appointing the receivers provides:

"Said receivers are hereby authorized and empowered to collect, as far as possible, accounts, etc., * * * and are fully authorized and empowered to sue in their name as receivers for and recover all the moneys, property, or assets of said company, and to that end are authorized to institute and prosecute all such suits by supplemental and ancillary bills herein, or in other courts of competent jurisdiction that may be necessary for the protection and preservation of, or in reducing to possession the properties, rights, and assets of, the said company."

[5] A consideration of the contentions of both parties leads us to the conclusion that the contention of appellant is unsound. 25 Cyc. 1282, states the following:

"As a general rule, mere appointment of a receiver does not in any way affect the running of the statute of limitation."

Thompson on Corporations, §§ 6894, 6895, states:

"The mere appointment of a receiver does not suspend the right of action against a corporation itself, unless the proceedings in which the receiver is appointed has resulted in dissolving the corporation, or it is the purpose to judicially dissolve the corporation, and the court enjoins the prosecution of any action against the corporation during the pendency of the suit, and gives as the reason for this rule because the existence of the corporation is not destroyed or even suspended by reason of the property or franchises being held in custody of the court of equity." Johnson v. Talley, 60 Ga. 540; White v. Meadowcroft, 91 Ill. App. 293; Williams v. Taylor, 99 Md. 306, 57 Atl. 641; Kirkpatrick v. McElroy, 41 N. J. Eq. 539, 7 Atl. 647; Meuseback v. Half & Bro., 77 Tex. 187, 13 S. W. 979; Belt v. Cetti, 100 Tex. 98, 93 S. W. 1000; Rindge v. Oliphint, 62 Tex. 685; Thomas v. Greer, 6 Tex. 372; Richardson v. Vaughan, 86 Tex. 93, 23 S. W. 640; Houston Oil Co. v. Griffin, 166 S. W. 902.

In the Griffin Case, just mentioned, it is held that the appointment of a receiver did not stop the running of the limitations that had begun. Cook on Corp. (7th Ed.) vol. 4, p. 3367, § 871, states the general rule that the appointment of a receiver does not stop the running of limitations in favor of a corporation, and cites Jackson v. Fidelity Co., 75 Fed. 359, 21 C. C. A. 394; Int. Ry. Co. v. McCulloch, 24 S. W. 1101. In the same volume, p. 369, § 871, he says: Even though a receiver has been appointed, the corporation may, by leave of the court, bring actions in its own name against any one, except the receiver, to try the legal title to property. Ry. Co. v. Sandoval, 111 Ill. 32; M., K. & T. Ry. Co. v. Graham, 12 Tex. Civ. App. 54, 33 S. W. 576; Smith v. T. & N. O., 101 Tex. 410, 108 S. W. 819.

The second assignment of error is as follows:

"The court erred, to the prejudice of the defendant, in submitting the case to the jury, and in rendering judgment against the defendant, because under all of the evidence in the case, as a matter of law, it was shown that plaintiff's improvements were on the Dikes survey, and were not on any part of the M. L. Abbott survey; so that under no theory of the case could judgment have been rendered except in favor of the defendant for all of the land in controversy, it having been agreed that defendant was the owner of the M. L. Abbott survey, unless plaintiff had acquired title to a part thereof under the ten-years statute of limitations, and defendant having filed its cross-action against plaintiff for all of the Abbott survey."

We have considered this matter as best we could under the first assignment, and we are of opinion that there is no merit in the assignment and that the same must be overruled.

The third, fourth, fifth, and sixth assignments will be considered together, as follows:

(a) "The verdict of the jury and judgment of the court to the effect that plaintiff's improvements are on the Abbott survey are erroneous, and are against the law and the evidence; and should be set aside, because, under the undisputed evidence in the case, the west line of the M. L. Abbott survey can be located with definiteness and certainty from the established corners of the Abbott survey, there being no evidence to show that the location from such established corners, by course and distance, should be disregarded and some other call given effect, so that such west line of the Abbott, when so located, is entirely east of plaintiff's improvements."

(b) "As the undisputed evidence in this case shows that plaintiff was not entitled to recover any land other than that on the A. Dikes survey, the court should have given defendant's requested charge No. 2, instructing the jury that plaintiff could recover only the land on the A. Dikes survey, and that as to the Abbott survey the verdict should have been in favor of the defendant. The court erred, to the prejudice of the defendant, in refusing to give its special charge No. 2, as follows: 'Gentlemen of the jury, in this case you are instructed that, under all the facts most favorable to the plaintiff, she can recover no more land than is included within the A. Dikes survey, and you will therefore return your verdict in favor of the defendant, and against the plaintiff, for all of the M. L. Abbott survey not in conflict with the A. Dikes survey'—because under all of the evidence in this case, taking that most favorable to plaintiff, all of her improvements were on that part of the Dikes survey owned by her in conflict

with the Abbott survey owned by the defendant."

(c) "As it appears from the evidence that the plaintiff entered upon land purely for the purpose of acquiring title by limitation, and under no claim of ownership or right, her possession would not be adverse under the statute; hence the verdict of the jury and the judgment of the court in plaintiff's favor are erroneous and highly prejudicial to the defendant."

(d) "As the uncontroverted evidence shows that plaintiff had no claim of right to the land at the beginning and during the continuance of her occupancy, but, to the contrary, showing that her sole intention was to claim 160 acres when her title should become full and perfect under the laws of limitation, the verdict of the jury and judgment of the court both are erroneous and prejudicial to the defendant, and therefore should be set aside."

Without going into detail on the merits of these assignments, a great many of which and perhaps all have been covered in the opinion as to the first assignment, and after a careful consideration of the same, we are of the opinion that the same should be overruled.

The seventh assignment of error is as follows:

"As the evidence in this case shows that plaintiff claimed a definite line as the south boundary of the land that she claimed on the M. L. Abbott survey, and as plaintiff sued for an undivided 160 acres of said Abbott survey, the evidence is insufficient to support the verdict of the jury and judgment of the court awarding to plaintiff an undivided 160 acres of land, it not being shown that plaintiff claimed an undivided 160 acres, but, to the contrary, that she made claim to a specific south boundary."

This assignment is submitted as a proposition, and also the following proposition is made:

"The verdict and judgment, giving appellee an undivided 160 acres out of the entire Abbott survey, must be set aside, for the appellee herself testified that she did not claim 160 acres out of the entire Abbott survey, but claimed 160 acres out of a definite part of the Abbott survey, so that the verdict and judgment are not supported by the evidence, but are contrary thereto; and that as the 160 acres claimed by appellee has its south line definitely fixed, the verdict and judgment awarding to plaintiff an undivided 160 acres out of the entire Abbott survey are not supported by the evidence, and must be set aside."

On the contrary, it is contended that there is no evidence of Mrs. Brown's claim to a specific tract by which judgment could be rendered for a defined portion of the Abbott. Mrs. Brown testified, in part, as follows:

"I told Mr. Hopson that I claimed 160 acres on the M. L. Abbott survey. I told him that I claimed 160 acres on the Abbott right there where my house sets. Q. What was the south line of the 160 acres that you claim? A. The 160 acres there where the house was. I claimed that the R. Gregory was the south line of my 160 acres. I claimed the 160 acres which south line was on the north line of the R. Gregory. I didn't say whether I was claiming in a square or not."

[6] There seems to have been no other evidence about a specific claim. She seems to indicate that she claimed to a specific line which was a boundary of the Abbott, but no

testimony of a claim to a specific tract or a specific 160 acres. In our opinion, this evidence tends to show a claim to the specified M. L. Abbott survey down to the Gregory line. Her house was not more than 500 varas from the Gregory line. We find no merit in the assignment, and it is therefore overruled.

[7] Appellant's eighth assignment is as follows:

"The court should grant the defendant a new trial in this case, for the reason that in his argument to the jury on the question of whether or not the east line of the Dikes survey was located on the ground at the place where plaintiff claimed it, or at the place where the defendant claimed it, the counsel for the plaintiff made improper and unfair argument as follows: 'Gentlemen of the jury, are you going to permit the Houston Oil Company of Texas to move these lines where they want them to be? If you do, there may come a time when it will come and move your lines around your lands'—which argument must have prejudiced defendant's case before the jury, especially as the verdict of the jury was so contrary to the great weight and preponderance of the evidence as to be clearly wrong, to which argument the defendant then and there in open court duly excepted because such argument was inflammatory and prejudicial to the defendant, was calculated to prejudice the jury against the defendant, and intended to alarm them," etc.

The bill of exceptions to the above language reads in part as follows:

"To which argument of said counsel the defendant then and there in open court duly excepted, because such argument was inflammatory and highly prejudicial to this defendant, calculated to prejudice the minds of the jury against the defendant; because same was an appeal to the local feeling of the various jurymen, tending to alarm them as to the safety of their own lands and land lines; because such argument was entirely out of the record, not supported by the facts or the pleadings, and was a request that the jury find against defendant in order to protect their own interests against the defendant; because such argument, though withdrawn by the court, and though the jury were told by the court not to consider the same for any purpose, remained in the minds of the jury, and likely would result in putting the defendants in an unfavorable attitude before the jury."

The argument was improper, but, as presented by the record, there is no reason to believe that it influenced the jury, and nothing is shown which would indicate that it did influence the jury. The court instructed the jury not to consider the improper language used by the counsel in argument, and the verdict shows plainly that it was not the result of improper argument, but was based upon the facts of the case in this record. We do not feel that in this attitude of the case, with a record that reflects throughout that the jury arrived at the conclusion which they did upon ample testimony, that we would be called upon to reverse and remand the case for the above improper argument alone. However, we desire to say and to emphasize that such argument should not be permitted to be used, as it seems in this case, in so far as the court was concerned, was not. We are of opinion that the language used,

although highly improper, is not of such gravity in this particular case as would render it right to reverse the case on that ground alone. The assignment is overruled. The ninth, tenth, and eleventh assignments will be considered together, as follows:

(a) "The court erred, to the prejudice of the defendant, in permitting plaintiff's witness Best, over the objections of the defendant, to testify that the line between the Abbott and Dikes survey was west of plaintiff's improvements, when the testimony of the witness showed clearly that he was testifying as to his opinion and conclusions, and not from any known facts, and not from anything found on the ground called for in the field notes to the Dikes or the Abbott surveys, his testimony showing that he only went there for the purpose of seeing the line, and there being nothing to show that the line about which the witness testified was the correct line."

(b) "The court erred, to the prejudice of the defendant, in permitting plaintiff's witness Worthy, over the objections of the defendant, to testify that the line between the Abbott and Dikes survey was west of plaintiff's improvements, when the testimony of the witness showed clearly that he was testifying as to his opinion and conclusions, and not from any known facts, and not from anything found on the ground called for in the field notes to the Dikes or Abbott surveys, his testimony showing that he only went there for the purpose of seeing the line, and there being. nothing to show that the line about which the witness testified was the correct line. The court erred, to the prejudice of the defendant, in permitting plaintiff's witness Worthy, over the objections of the defendant, to testify as to where the line between the Dikes and Abbott surveys was located, because the location of this line was a controlling issue in the case which should have been left to the determination of the jury from all of the facts in evidence, uninfluenced by the opinion and conclusions of the witness as to where he believed the line was located."

(c) "The court erred, to the prejudice of the defendant, in permitting the witnesses for the plaintiff, over the objections of the defendant, to testify that the east line of the Dikes survey ·was west of plaintiff's improvements, so as to place plaintiff's improvements on the Abbott survey, because such testimony necessarily was as to conclusions and opinions of the witnesses on a material and important issue in the case, which should have been determined only by the jury, uninfluenced by opinions and conclusions of witnesses testifying on the trial, and because such testimony was in conflict and antagonistic to the location of the land by the field notes of the survey. The court erred, to the prejudice of the defendant, in permitting plaintiff's witnesses to testify, over the defendant's objections, that plaintiff's improvements were east of the Dikes survey, on the Abbott survey, and that the east line of the Dikes and west line of the Abbott was west of plaintiff's house, because such testimony was in conflict with and antagonistic to the location of the Dikes and Abbott surveys, and of the line between. them when established according to the field notes of each of the surveys, so that the testimony of the witnesses was an attempt on the part of the plaintiff to locate the Dikes survey and the Abbott survey, and the line between them, otherwise than by the locative calls, in the field notes of said surveys."

[8, 9] It seems that testimony of the same character was produced by both appellant and appellee without objection or reservation. It further appears from the record that the testimony of these parties was to the effect as to where. lines were actually located, and showed the west line to be the old line, and the only line run upon the ground until very recent years, the evidence saying the improvements were east of such old and only line, and, in our judgment, this was properly admitted. Best, one of the witnesses for appellant, testified with reference to these matters, which testimony was brought out by appellant. The assignment, in our judgment, has no merit, and the same is overruled.

The twelfth assignment of error is as follows:

"The court erred, to the prejudice of the defendant, in refusing to give its requested charge No. 5, as follows: 'Gentlemen of the jury, was the possession, cultivation, and use, if any, by the plaintiff, of the land covered by her improvements, if any, sufficient to constitute to the defendant notice that plaintiff was claiming 160 acres of land or only the land covered by her improvements? You will answer this question by stating what you believe the facts to be in your own words'—because such issue of fact was clearly raised by the evidence in the case, so that the defendant was entitled to have the specific question determined by the jury."

The court gave appellant's special charge No. 4, which reads:

'"Gentlemen of the jury, was the possession, cultivation, and use, if any, of the land covered by the plaintiff's improvements, if any, sufficient, under all the facts and circumstances and evidence before you to constitute notice to the defendant that the plaintiff was claiming 160 acres of land out of the M. L. Abbott survey? You will answer this question 'Yes' or 'No,' as you may find the fact to be. If you answer the foregoing question 'No,' then you will not answer the following question, but if you answer the foregoing question 'Yes,' then you will state what 160 acres of land plaintiff's possession, cultivation, and use, if any, under all the circumstances and facts of this case, gave notice of her claim to the defendant."

The jury answered the first question "Yes," and to the last question, "We answer that part of the M. L. Abbott survey including Mrs. Brown's improvements."

[10] The court gave, as above set out, in its charge the material issues in the case, and it was not error for the court to refuse a special charge that sought to single out and submit a question to the jury that was not controlling. Having given the charge as above stated, it was not error to refuse the further charge as complained of by the appellant. The assignment is overruled.

The thirteenth and fourteenth assignments of error are as follows:

(a) "The court erred in refusing to submit to the jury defendant's requested charge No. 8, as follows: 'Gentlemen of the jury, at what distance and in what direction is the northeast corner of the A. Dikes survey from the southeast corner of the E. Dickerson survey, if any? You will answer this question in your own words as you find the fact to be'—because, taking the view of the case most favorable to plaintiff, a question of fact was raised as to what distance and direction, if either, the northeast corner of the Dikes survey was from the southeast corner of the Dickerson survey. As, under

the view of the case most favorable to plaintiff, a question of fact was raised as to whether or not the northeast corner of the Dikes and the southeast corner of the Dickerson were located at the same place, or whether or not the northeast corner of the Dikes was 90 varas east of the southeast corner of the Dickerson, such issue of fact should have been submitted to the jury for their determination, and the court erred, to the prejudice of the defendant, in refusing its requested charge No. 8."

(b) "As there was evidence showing that the west line of the Abbott survey was ninety varas or more east of the southeast corner of the Dickerson survey, and as the evidence showed that all of the plaintiff's improvements were less than ninety varas east of the southeast corner of the Dickerson, there was raised a question of fact as to whether or not the west line of the Abbott survey was east or west of the plaintiff's improvements, so that the defendant was entitled to have the jury pass on the specific question as to what distance and what direction the west line of the Abbott was from the southeast corner of the Dickerson survey, and which issue was set out in defendant's requested charge No. 9, refused by the court, which refusal of the court to submit the charge was erroneous and prejudicial to the defendant, and to which action the defendant duly excepted. The court erred, to the prejudice of the defendant, in refusing to give defendant's requested charge No. 9, as follows: 'Gentlemen of the jury, at what distance and in what direction is the west line of the M. L. Abbott survey from the southeast corner of the E. Dickerson survey, if any? You will answer this question in your own words as you may find the facts to be'— because the defendant was entitled to have the jury say where the west line of the Abbott survey was located under all of the facts in evidence, the defendant being entitled to have the jury pass on the specific question involved."

In our opinion, the court in its charge gave to the jury the material issues in the case, and it was not error to refuse a special charge that sought to single out and submit a question to the jury that was not controlling.

[11] The jury found that Mrs. Brown was on the Abbott survey. In our judgment, it becomes immaterial about the distance, no facts indicating from this record that it was an encroachment, and no question of encroachment was raised.

All the field notes call for the distance 400 varas from the northeast corner of the R. Gregory to the southeast corner of the Dikes and the southwest corner of the Abbott, which calls, in our judgment, should control over the 90 varas distance the appellant sought to have found as a fact.

We have carefully gone over the entire record, which is very lengthy, and the questions arising upon the trial. We believe that the appellant had a fair and impartial trial; that the facts presenting its defense were submitted to the jury in a brief and comprehensive way; that the jury has found from the evidence, which in our judgment was ample, in favor of the appellee; and, finding no error in the record that would warrant us in setting the judgment aside, we are of opinion that the judgment ought to be in all things affirmed. It is so ordered.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes