FERDINAND BODMAN and Wife, *vs.* JOHN MUR-PHY & Co.

*Claim by Lessees for a Covenant in the Lease, exempting them from Liability for Damage by fire to the Premises, resulting from their own Negligence.*

A receiver appointed to take charge of certain trust property, entered into a written agreement to lease a house and lot, part of the trust estate, for a term of five years, at a specified annual rent—the agreement to be subject to the approval of the Circuit Court of Baltimore city. The receiver tendered a form of lease, containing the usual covenants for repairs on the part of the lessees—together with a covenant on his part to keep the premises insured; the lessees were also to be liable for any injury by fire to the building caused by their own negligence. This form of lease the lessees refused to accept, insisting that inasmuch as the premises were to be insured by the receiver, and they were to pay the extra premium consequent upon having a steam engine on the premises, they were entitled to be exempted from all responsibility for injury by fire to the premises, though occurring by their own negligence or that of their employees; and that in case of the destruction of the building by fire, it should be rebuilt by the lessor without delay, the rent, in case of accidental fire only, to be suspended in the meantime. The Circuit Court passed an order directing a lease in the form suggested by the lessees. On appeal by a *cestui que trust*, this order was reversed, it being HELD:

That in the absence of previous express stipulations to that effect, the lessees were not entitled to the covenants demanded by them.

APPEAL from the Circuit Court of Baltimore City.
The case is fully stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART,
BRENT, BOWIE, MILLER, ALVEY and ROBINSON, J.

*Julian I. Alexander,* for the appellants,

Argued that the appellees, dealing with the receiver, dealt
with notice of the course of the Court in cases where a re-
ceiver is appointed, and as a bill for an injunction and receiver
is to stop the administration of the estate and to provide only
for the safety of the rents, the Court exercises but limited
powers over the estate, and therefore requires from the tenant
the ordinary covenants for repair, and holds him to his ordi-
nary responsibilities. He referred to *Gibbons vs. Howell,*
3 *Mass.,* 469.

He then insisted that though it might be conceded for the
sake of the argument that the lessor was to insure, &c., yet
this was in connection with the covenant for repair from the
tenant, and was a mere oral proffer and was refused. Hence
the rights of the appellees were to be sought in the agreement
for lease, and the covenants to which they were entitled, were
those only which were incident to the relation of tenant and
landlord. It appears from *Church vs. Brown,* 15 *Ves.,* 258,
that neither landlord nor tenant is entitled to a covenant
which would contradict an incident of the estate of the other;
but it is incident to the contract of lease that the tenant shall
do no waste. Now burning a house by negligence or mis-
chance is waste. *Co. Litt.,* 53 *b;* and the English doctrine
of waste is our doctrine. *White vs. Wagner,* 4 *H. & J.,* 373.
Next, the tenant is liable on the contract, or for use and
occupation, though the premises are burned down during the
term and unoccupied. *White vs. Wagner,* 4 *H. & J.,* 564;
*Baker vs. Holtzapfel,* 4 *Taunt.,* 45. Nor do an insurance on
the house and the receipt of the insurance moneys by the
landlord and his non-repair out of these moneys, constitute an

equitable—much less a legal defence to such an action. *Lofft vs. Dennis*, 1 *E. & E.*, 474; indeed, in *Leeds vs. Cheetham*, 1 *Sim.*, 146, it was held that a tenant had no equity to compel the landlord to expend insurance moneys received by him in re-building the premises after a fire, nor to restrain him from suing for the rent in the meantime. Again in *Doe vs. Sandham*, 1 *T. R.*, 705, a covenant that in case the premises should be burned by lightning or other *accidental fire*, the lessor should rebuild, or the rent should cease and the tenant be discharged, was held unusual and extraordinary. So the house adjacent belongs to the trust estate. Now it has been held that a fire negligently lighted or kept by a person or his servant on his own premises which communicates with his neighbor's premises, is not within the protection of *Stat.*, 6 *Ann. c.* 31, which does not apply to a case of negligence or a fire intentionally lighted. *Filliter vs. Phippard*, 11 *Q. B.*, 347. Thus, if a negligent fire from Murphy & Co's premises communicates with the adjoining house, Murphy & Co. are liable therefor. Therefore, it is incident to the contract of lease, that the tenant should be liable for the consequences, whatever they are, of a fire. If the fire is waste, he is liable for waste, or if the waste is released, he must still pay rent. If he burns the premises negligently, he is liable if the fire communicates to his neighbor's house, whether his landlord or not. And a covenant by the landlord to rebuild or let the tenant go in case of *accidental* fire, is unusual and extraordinary. Hence, in the absence of express stipulation, the tenant is clearly not entitled to such a covenant. The consequences of such a covenant would be frightful. And besides, it is an undoubted maxim of the law, that where there is privity, neither party can stipulate against the consequences of his own negligence or default. *Martin vs. G. I. P. Railway Co.*, *L. R.*, 3 *Ex.*, 9.

Lastly, the effect of the covenant would be to avoid the insurance on the premises in question as well as the adjoining premises. In *Mason vs. Sainsbury*, 3 *Doug.*, 61, it was held

that the underwriter might maintain an action in the name of the assured against the hundred, where a house was demolished by rioters, and see *Phillips on Ins.*, secs. 1711–12. And in *London Assurance Co. vs. Sainsbury*, 3 *Doug.*, 245, it was held that the underwriter could not sue in his own name. But the proposed covenant would be a release of any action by the lessor for a wilful or negligent fire of Murphy & Co., and a bar to an action by the underwriter in the lessor's name. Now insurance is a contract of indemnity, but here the position of the indemnifier would be altered, and his remedies discharged by the act of the party indemnified, and he would be consequently released from his contract.

*S. Teackle Wallis*, for the appellees.

If this Court determine to review the action of the Court below, the only question here is, was such action reasonable or not.

In view of the well known decisions of this Court in *White vs. Wagner*, 4 *H. & J.*, 373; *Wagner vs. White*, 4 *H. & J.*, 564; *Hess vs. Newcomer*, 7 *Md.*, 336, &c., it has been for years the recognized usage of intelligent, real estate lawyers and conveyancers in Baltimore, to provide by special clauses or covenants in leases against the rigor of the rule there laid down, which is in fact nothing more than a rigorous holding of the tenant to the obligations of an express and voluntary covenant, which, if he chooses, he may refuse to enter into. So, too, in contemplation of the risk of destruction by fire in large cities, through the negligence of servants and employees, it is equally customary to provide by special clauses in leases, for the insurance of the property, for the benefit of all parties, upon specified terms as to the payment of premium, and the re-building of the houses. *Bunyon on Fire Insurance*, 132. It being perfectly well recognized law in this State, as elsewhere, (*Maryland Ins. Co. vs. Whiteford*, 31 *Md.*, 227,) that a loss by fire, occasioned by the fault or negligence of the insured or his servants, without fraud or design, is a loss

within the policy, there is no principle of law or public policy to be contravened by giving to the tenant, in connection with an insurance which the lessor contracts to make, and the tenant to pay for, in whole or in part, the same advantages the tenant would have if he took out the *policy* himself. Certainly, no insurance company could successfully deny its responsibility, on the ground of an arrangement between the parties so entirely consistent with its proper liabilities.

That the insurer of premises next door would be discharged of his liability, by such a lease, on the ground that the lessee was thereby licensed to be negligent, is a proposition which cannot be maintained. If the tenant, by the lease, were required to insure for the benefit of both parties, his negligence would be no bar to the recovery of either.

The order of the Court below is entirely free of legal objection. Its equity and reasonableness are manifest, and the question here is not as to what covenants the appellees might have compelled, on a bill for specific performance of the written memorandum, but only, at most, whether the order of the Court below, being within the range of its powers, was, on the whole, reasonable and fair.

MILLER, J., delivered the opinion of the Court.

It appears from this record, that in an equity suit respecting a trust estate, pending in the Court below, a receiver was appointed to take possession and charge of the property, and whilst so in charge he and the appellees entered into a written agreement for the renting of a part of it. By this agreement the receiver as such agrees to rent to the appellees the premises No. 182 West Baltimore street, for a term of five years, commencing July 1st, 1871, for the yearly rent of $4,700, payable quarterly, the agreement to be subject to the approval of the Circuit Court of Baltimore city.

The appellees then filed a petition to the Court in which they charge that when this agreement was executed, the re-

ceiver expressly engaged that he would give them an entirely satisfactory lease without any objectionable clause whatever, and that in the preparation of such lease this single difficulty had arisen, viz: It having been agreed that the premises should be kept sufficiently insured by the lessor, the lessees paying the excess of premium required by reason of their having a steam engine on the premises, they insist on a further provision that if the premises are destroyed by fire, the lessor shall re-build without delay, whereas the lessor insists that if a fire occurs through default or negligence of the lessees, they shall be bound to rebuild, even though the lessor recovers the whole insurance money; and they say that while they are willing to pay rent during the re-building, if the fire results from their negligence, it is but fair and reasonable that the lessor should re-build in that event, as negligence of the assured is no bar to the recovery of the insurance money.

In his answer to this petition the receiver denies in substance, that he ever agreed to execute a lease satisfactory to the lessees, or to admit therein any provision which he was not, by the terms of the written agreement, obliged to have inserted. He says he has tendered them a lease such as he conceives to accord with the agreement, but they have refused to accept it, insisting that as he is to insure the premises they are entitled to exemption, by express covenant on his part, from any action, suit or responsibility for damages by fire, even though resulting from their negligence, or that of their agents or servants. He insists that such a provision is not comprehended in the agreement, and is unusual and extraordinary; that he is advised the lessees have nothing to do with any insurance he may effect on the property, and that the excess of premium agreed to be paid by them is only in respect of their having and using a steam engine on the premises, and that such a clause in the lease would be equivalent to permitting the lessors to do waste at their pleasure. He further says he has never insisted on a provision requiring

the lessees in terms to re-build in case of loss by fire from their negligence or wilful act, but he .submits that all the ordinary remedies of a landlord against his tenant should be expressly reserved in this case.

Certain forms of covenants and stipulations to be inserted in the lease were then proffered to the Court by the respective parties. Those proposed by the receiver and the solicitor for the appellants, were in substance that the lessees shall keep the premises in good repair during the term, and at the expiration or determination thereof, yield and restore them in as good condition as they now are, reasonable wear and tear excepted, and casualties by fire or tempest, unless caused by negligence or default of the lessees, also excepted, and if the premises are destroyed or injured by any of the excepted causes, then the lessor shall reïnstate and re-build, employing therein the insurance money, in whole or in part, within a convenient time after recovering the same, and during the time the lessees shall be unable to occupy in consequence of such re-building, the rent shall be suspended, but nothing herein shall be taken to do away with or suspend any right of the lessor to proceed against the lessees for any injuries by fire occasioned by their wilful act, default or negligence, or for the rent that may accrue during the non-occupancy of the premises in consequence thereof.

The lessees proposed the following should be inserted: "Casualties to said building from any cause except fire, and not resulting from negligence, default or wilful act of the lessees, and casualties from fire also excepted;" and further, "that in case of the destruction of the said premises in whole or in part, by any cause, except fire, and not resulting from negligence, default or wilful act of the lessees, or by fire, the lessor shall repair the same without unreasonable delay, the payment of rent during such repairs to be suspended in whole or, in part, as the case may be, provided there shall be no suspension of rent in any case where the destruction or injury repaired shall result from negligence, default or wilful act of

Bodman and Wife *vs.* Murphy & Co.

the lessees." The covenant for insurance and payment of extra premium by the lessees, precedes the aforègoing.

The Court ordered the receiver to make a lease to the appellees according to the terms of the form submitted by them, adding thereto a proviso against assignment without the consent of the Court, and from this order the original complainants, parties interested in the trust estate, have appealed.

We cannot affirm this order. It requires the proposed lease to contain in effect—first, a covenant for insurance by the lessor, the lessees paying only the extra premium due to their use of a steam engine on the premises; second, an exemption of the lessees from the obligation to keep and restore the premises in good repair, if destroyed by fire occasioned by their own negligence or default, or that of their servants, agents or employees; and third, an obligation on the lessor to re-build or repair, in case the building be destroyed or injured by fire resulting from such negligence or default. It is true that express covenants respecting the insurance of demised buildings, are now almost universal in leases. In some cases, they are obligations on the part of the landlord to insure and expend the insurance money in re-building, and the cost of so doing is taken into consideration in fixing the amount of the rent, but they are more commonly imposed upon the lessee for the benefit of the lessor. In fact, so usual is such a covenant and so common the practice to fasten it upon the tenant, that it has been held that if an agreement be made for a lease, to be executed with the usual covenants, the lessee is not entitled to have the insurance covenant omitted. *Bunyon on Fire Ins.*, 132, 133. There is nothing in the case before us, to show that the rent stipulated for in the agreement, was then fixed in view of any obligation of this nature on the part of the lessor, nor can we infer, from anything in this record, any subsequent assent from him to more than a simple covenant to insure, and expend the insurance money in re-building, if the premises were destroyed by tempest, or by fire not caused or occurring by the negligence or default of

the lessees. Now, assuming his assent to this extent to be binding, the probable, if not the inevitable result of the exemption the lessees now claim, and the obligation they seek to impose on the lessor, would be to increase the cost of such insurance, for no underwriter, having any regard to his own interest, would knowingly insure a landlord upon property in possession of a tenant who, by the express terms of his lease, was virtually allowed to commit waste by being practically exempted from responsibility for fire occasioned by his own negligence, at the same rate as if the tenant were held to his ordinary liabilities which the insurer, by subrogation could enforce.

But apart from this, the original written agreement contains no provision whatever on the subject of covenants or exemptions. It is simply an agreement to let for a term of years at a specified annual rent. It does not even provide that a lease shall be executed with the usual covenants, and in our opinion it is very clear, in the absence of previous express stipulations to that effect, the lessees cannot insist, as matter of right, upon the covenants and obligations they now require. If this agreement contemplated the execution of a more formal lease, and the lessees had filed their bill for specific performance, the Court would have no power to grant them this immunity, or impose on the lessor this obligation; for to do so would be in effect declaring that, in the absence of all antecedent contract to that end, a tenant shall be exempt from all responsibility for the destruction of the leased property by fire caused by his own negligence, and that the landlord shall insure and expend his insurance money in re-building in that event, and that these are among the usual and necessary incidents of the relation of landlord and tenant. Such a decision would subvert the settled law of the State on this subject, and overrule numerous well-considered and solemn adjudications of this Court.

If, then, the appellees could not obtain such a lease under a bill for specific execution of the agreement they made with

the receiver, we think it quite clear their present application ought not to be granted. The Court has before it a litigation respecting a trust estate, in which the *cestuis que trust,* or some of them upon whom these burdens would be imposed, are merely tenants for life. The trust property has been placed and is at present in charge of a receiver, whose office the law contemplates, shall be temporary, and who is the mere hand of the Court, holding for the benefit of those ultimately entitled. In such a case it would, in our judgment, be a most dangerous precedent to permit such an officer, even if he were disposed to do so, to make a contract of leasing such as the appellees demand, without the full and free assent of all parties interested in the estate, much less ought it to be done against the wishes, and in face of the protest of any of the *cestuis que trust.'*

*Order reversed and*

*cause remanded.*

(Decided 14th February, 1872.)