## E. R. WILLIAMS, Receiver, *vs.* D. B. TAYLOR.

*Corporations—Action by Receiver of Foreign Corporation to Recover*
*Unpaid Stock Subscriptions—Limitations.*

In 1890 defendant subscribed for certain shares of stock of the Lexington Company, a Virginia corporation, and agreed to pay $1.00 per share at the time of subscription and $1.00 at the call of directors and $1.00 per share every sixty days thereafter if needed, until the whole amount be paid. The subscription referred to the prospectus which stated that the installments would be payable "until by a sale of the lots of the company such payments shall be declared unnecessary by the Board of Directors," and that it was "not believed that more than five calls can be necessary." Defendant paid five installments as called for, the last on June 20th, 1891, and none afterwards because the directors then issued a circular to the stockholders saying, "it is confidently believed that the stock can be paid up by dividends from the earnings of the company." In 1893 a creditor filed a bill against the company in Virginia, but not against the stockholders, and under that bill a receiver was appointed who was authorized and directed to collect all the assets of the corporation. Under the Virginia statute, while the Chancery Court has jurisdiction to make assessments upon stockholders, the receiver is required to bring suit in a Court of law to recover them. The receiver brought this action to recover the balance due on defendant's subscription to the stock in July, 1900. *Held,* that according to the terms of defendant's subscription his liability to pay the installments every sixty days continued "until by the sale of the lots such payments should be declared unnecessary by the board," and since no such declaration was

ever made defendant was liable to pay without the necessity of any call by the corporation, and that the Statute of Limitations began to run against the claim for the subscription as said installments respectively matured, and since the last installment of defendant's subscription matured on April 20th, 1892, and this action was not brought until more than eight years thereafter, the statute is a bar.

*Held,* further, that the filing of the creditor's the bill against the corporation did not arrest the running of the Statute of Limitations because it was not an institution of a suit against the subscriber.

*Held,* further, that under the decree appointing the receiver in July, 1893, he was authorized to institute suits to recover unpaid subscriptions, and neither his failure to do so nor the appointment of a subsequent receiver with enlarged powers arrested the running of the statute against the claim sued on in this case.

In 1892 there was a legislative amendment of the charter of the company declaring its stock paid up and non-assessable when 50 per cent had been paid thereon, provided "the holders of such certificates shall not be liable for further assessment thereon for the debts of the company contracted after the passage of this Act." *Held,* that this statute did not change defendant's liability for the claim of then subsisting creditors, nor postpone the time when limitations began to run against the claims of such creditors.

Appeal from Baltimore City Court (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*R. E. Lee Marshall* and *J. Hanson Thomas,* for the appellant.

*Randolph Barton* and *Redmond C. Stewart,* for the appellee.

FOWLER, J., delivered the opinion of the Court.

This is an action to recover certain installments of unpaid subscriptions to the stock of the Lexington Development Company, a corporation incorporated under the laws of Virginia.

David B. Taylor subscribed to 350 shares of the capital stock of this company in October or November, 1890, and signed the following contract:

"I hereby subscribe for 350 shares of the capital stock of

the Lexington Development Company of the par value of ten dollars ($10) each, upon the following terms and conditions, as set forth in the prospectus, and agree to pay the same, as follows: One dollar down at the time of subscription, one dollar per share at the call of the Board of Directors and one dollar per share every sixty days thereafter, if needed, until the whole amount is paid."

The terms and conditions, as set forth in the prospectus are these :

"The company will offer for sale 60,000 shares of stock of the par value of $10.00—one dollar per share upon the call of the Board and one dollar per share each sixty days thereafter until by a sale of the lots of the company such payments shall be declared unnecessary by the Board of Directors. If more than $300,000 should be called for, such excess will belong to the stockholders. It is not believed that more than five calls can be necessary, and it may well happen that three calls will furnish all the money the company will need to pay on the property and improve the town site, before a sale of the lots, will render any further demand upon the stockholders unnecessary. This was the experience at our sister towns, Salem and Front Royal, and the Lexington Development Company confidently believes that no other locality offers superior advantages as a place for the safe and profitable investment of money."

The sequel shows that this is only another of the many instances of misplaced confidence.

It appears and is conceded that the defendant, Mr. Taylor, paid five of the installments according to his agreement, that is to say, the first was paid at the time of the signing of the agreement, the second on the 20th December, 1890—the time fixed by the Board of Directors, the third sixty days thereafter, on the 20th February, and the fourth and fifth respectively on the 20th of April and June as provided by the agreement. The five unpaid installments matured respectively August, October, December 20th, '91 and February and April 20th, '92—but were not paid. The reason why they

were not paid appears to be that after the payment of the first five installments (50 per cent of the subscription) the Board of Directors issued a printed circular to the stockholders which read as follows: "It is confidently believed that the stock can be paid up by dividends from the earnings of the company, and these dividends will be so declared whenever and as fast as the assets of the company will justify."

It is evident, therefore, that on the 20th August, 1891, when the sixth installment became due, and each sixty days thereafter until and including the 20th April, 1892, when the tenth and last installment matured, the subscriber, Taylor, was indebted to the company and it had a right to sue for and recover the respective installments. The Statute of Limitations, therefore, commenced to run in his favor when those installments respectively matured, unless as was so earnestly contended on behalf of the plaintiff the defendant did not become liable on his contract until long after the time just indicated.

On the sixth of July, 1900, this suit was instituted against the defendant, David B. Taylor, by E. R. Williams, receiver of the Lexington Development Company, to recover the unpaid installments above mentioned. The defendant pleaded the general issue, and two pleas of limitations, one relating to the time of the bringing of the original suit and the other to the time when the amended *narr.* was filed—the latter being based upon the theory that the amendment made a new case. A motion that the pleas of limitations be not received was overruled, issue was joined and there was a verdict for the defendant.

During the course of the trial the Court granted two prayers of the defendant the first of which declared that the liability to pay the amount of his subscription accrued more than three years before July 6th, 1900, the time of the bringing of this suit. The theory of the second prayer is that the amended *narr.* filed November 12th, 1903, constituted a new cause of action and that limitations could be pleaded to the declaration as so amended whether it was applicable to the

original declaration or not. Both of these prayers were granted and the exception taken to this action of the Court presents the only question involved in this appeal, namely whether the plea of limitations is a bar to the original suit instituted July 6th, 1900. The conclusion we have reached renders it unnecessary to discuss the second plea of limitations which goes to the amended *narr*.

The last installment of subscription having matured on April 20th, 1892, and this suit not having been brought until more than eight years thereafter, towit, on the 6th July, 1900, the statute will, of course be a bar, unless something has occurred to prevent such a result. The only remaining inquiry, therefore, is whether anything and if so, what has intervened to prevent the running of the statute.

In the first place it is contended that the contract of subscription was not an absolute, but only a conditional contract. As we have already said it would appear that at the expiration of each period of sixty days the defendant's obligations matured. It does not appear that anything save the failure of the plaintiff to enforce its rights prevented it from so doing except, as expressed in the printed circular to the stockholders that it "confidently believed" that the remaining 50 per cent of the stock would be paid up by dividends from the earnings of the company. But as we have seen, this was a delusion. According to the terms of the prospectus the company had the right to continue to collect the unpaid installments "until by a sale of the lots of the company such payments shall be *declared unnecessary by the Board of Directors.*" But no such declaration was ever made. The contract of subscription contains the provision that one dollar per share shall be paid every sixty days and "if needed," until the whole amount is paid. This expression is explained by the prospectus which is made a part of contract, and it is evident that what it means is that if by the sale of lots and the dividends derived therefrom the remaining installments could be paid the subscribers would not be called on to pay any more. If in point of fact lots had been sold and money had been realized by the com-

pany sufficient to enable the Board of Directors to declare
dividends equal to the unpaid subscriptions, it is clear that
under the contract, the prospectus being a part thereof, the
company would not be allowed to sue.    But no such situation
was presented, for there was no sale of lots and consequently
no such dividends as were "confidently expected."    It would
seem to follow, therefore, that the right either of the company
or of its receiver to sue the plaintiff in this case, continued as
each installment fell due until the bringing of this suit, which,
as we have seen, was a period far beyond the period of limi-
tation.

But it has been argued that the filing of the creditors bill
by the Glasgow Company against the Lexington Improvement
Company on the 19th January, 1893, in the Circuit Court for
Rockbridge County, Virginia, and the appointment of a re-
ceiver in that case put an end to the running of the Statute
of Limitations.    Not so, however, if we are to be governed
by our decision in the case of *Williams* v. *Watters,* 97 Md. 113,
where we passed upon this identical question, and the effect
of that suit in the Virginia Court upon the question of limita-
tions in a suit like this by the same plaintiff against another
stockholder to recover unpaid subscriptions.    We there said:
"Nor did the filing of the bill by the Glasgow Company
against the Development Company in January, 1893, arrest
the running of the statute, for it is not averred in the declara-
tion that that proceeding sought to subject to any liability the
stockholders who had paid 50 per cent of their subscriptions,
or that it sought to recover from them any part of the unpaid
50 per cent; and therefore there was no cause pending which
involved a demand for the unpaid 50 per cent until the amended
bill was filed in August, 1898, when the bar of the statute as
respects the original installments had completely attached."

We do not understand that it was contended that the ap-
pointment of the receiver without more, in the proceedings
just mentioned, would have the effect of stopping the running
of the statute.    The mere authority given him to sue is not
sufficient.    The demand must be made by the institution of

the suit which by the decree of the Chancery Court he was authorized to bring to recover the unpaid subscriptions.    It is true it is alleged in the amended *narr.* in this case that a decree was passed by the Virginia Chancery Court calling for the payment by the stockholders of the 50 per cent remaining unpaid and appointing the plaintiff receiver with full power to sue for and collect said assessments.    But under the Virginia Act of December 22nd, 1897, while the Chancery Court has jurisdiction to make assessments, the receiver is required to bring suit in a Court of law to recover them from the respective stockholders.    But it is apparent that the amended and supplemental bill of 1898 was no more than the original bill a proceeding against the stockholders.    No decree against *them* is asked for because the Act of 1897, already referred to, was in force when it was filed, which Act, as we said in *Williams* v. *Watters, supra,* has taken from the Virginia Chancery Courts "the power to pass a final decree binding the stockholders by representation."

The object of the proceedings in the Circuit Court for Rockbridge County was to ascertain the assets of the company, the amount of unpaid subscriptions and the appointment of a receiver who could gather in the former if any, and to sue for and recover the latter in a Court of law if the stockholders were liable.

We entirely agree with the learned Judge of the Baltimore City Court in the view expressed in his opinion in regard to the effect of the decree of July 1st, 1893, passed by the Circuit Court for Rockbridge County in the bill of 1893 already referred to.    He says, "I can conceive of no broader language or language more fitted to authorize and direct the receiver to proceed to collect every available asset of the corporation; and as necessarily incident, to do whatever might be necessary to enable him to carry out this direction by making calls for unpaid subscriptions, if necessary, or taking whatever steps might be proper to enable him to execute the plain direction of the Court. * * * . Under this decree, therefore, it seems to me the receiver was fully authorized to do whatever was nec-

essary to collect the unpaid installments due by this defendant as being part of the assets of the company. He * * * could have brought suit without a call; in other words his right of action against the defendant for the latter's unpaid subscription began absolutely with the date of the decree. The moment the right of action accrued (first July, 1893), the statute began to run; and neither his failure to proceed under the circumstances disclosed by the Virginia record, nor the appointment of a subsequent receiver with enlarged and more specifically defined powers, could stop the running of the statute when once begun."

Finally it was suggested that the passage of the Act of January 9th, 1892, and the acceptance by the defendant of the 50 per cent unassessable certificate authorized by that act enlarged the period of limitation.

It appears that at a general meeting of the stockholders held on the eighth October, 1891, a resolution was passed directing an amendment to the charter of the Development Co. declaring its stock paid up and non-assessable on the payment of 50 per cent thereof. In accordance with this resolution the Legislature of Virginia passed the Act just mentioned amending the charter of the company according to the resolution—with this proviso, however; "the holders of such certificates shall not be liable for further assessments thereon for the debts or liabilities of the company contracted *after the passage* of this Act." It is evident, therefore, that the defendants liability to the claims of creditors subsisting at the time of the passage of the Act was in nowise changed. As we have seen, this suit is alleged to be for the benefit of a creditor of the class excepted from the operation of this Act—and, hence, we are unable to understand how its passage can have the effect to postpone the time when limitations began to run against such a creditor's claim.

In the additional notes filed on behalf of the plaintiff it is said that the crucial points in this case is whether after the issue of the certificate under the Act of January 9th, 1892, the defendant was under any legal obligation to pay the par value

of his stock in five equal installments every sixty days without notice or demand for such payment from the company, and whether he was in default for not making such payment. We agree that this is the important question in the case, and what we have already said shows that in· our opinion neither the Act of 1892, nor the acceptance of the ceitificate changed the liability of the defendant to the claims of creditors existing at the time of the passage of the Act. It also follows from what we have said that we are of opinion that the installments of unpaid subscriptions were due and payable by the *terms of the contract*, and that the defendant was in default as and when hey matured without the necessity of any call made by the company. Doubtless there are cases, and some of them are cited in which it has been held that before there is any obligation upon the stockholder to pay, without an assessment and a call by the company, there must be some order of a Court of competent jurisdiction, or at the least some authorized demand for payment before the statute will begin to run. We have already said, however, that in this case the liability of the defendant to· pay the unpaid installments was fixed by the contract of subscription, and that neither a call nor a demand of any other kind was necessary to fix the amount due and payable and the *punctum temporis* from which the Statute of Limitations began to run.

It follows, therefore, that in our opinion there was no error in granting the defendant's first prayer by which it is declared that limitations is a good defense to this suit.

·        *Judgment affirmed with costs.*

(Decided March 23rd, 1904.)