BERNARD S. LUST ET AL. *v.* CELIA C. LUST KOLBE

[No. 1016, September Term, 1975.]

*Decided May 10, 1976.*

484

The cause was argued before MORTON, POWERS and GILBERT, JJ.

*A. Howard Metro* for appellants.

*Alan S. Feld,* with whom were *Lawrence Z. Bulman* and *Bulman, Goldstein, Feld & Dunie* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Celia C. Lust Kolbe, the appellee and mother of Bernard S. Lust, entered into a limited partnership, on January 1, 1967. The business endeavor was known as Sidney Lust Theatres Limited Partnership.[1] The appellant, Bernard S. Lust, served as the general partner and his mother as the limited partner.

Whatever the relationship was between the parties prior to April 12, 1973, it may now safely be characterized as far removed from being serene. On that date the appellee filed a bill of complaint in the Circuit Court for Montgomery County in which she alleged the existence of the limited partnership, charged mismanagement of the business by her son, the appellant, averred a breach of appellant's ". . . confidential and fiduciary relationship . . ." with the appellee, and stated that appellant was ". . . conducting himself in matters relating to the partnership business in such a way that it . . . [was] not reasonably practicable to carry on the business of the partnership." The bill prayed that the court decree a dissolution of the partnership,[2] order an accounting by the appellant to the appellee, enjoin

---

1. Sidney Lust, now deceased, was the husband of the appellee and the father of the appellant.

2. A limited partner has the right to "Have dissolution and winding up [of the partnership] by decree of court." Md. Ann. Code, Corporations and Associations Art. § 10-109 (a) (3).

appellant from removing or secreting partnership assets, declare a constructive trust in favor of appellee, appoint a receiver for the business, enter judgment against appellant for any sum found due by him to appellee and direct a sale of the partnership assets. Appellant, in due time, answered the bill and specifically denied the material allegations of the complaint.[3]

The case was called to trial before Judge Ralph G. Shure on July 9, 1973. During his opening remarks to the court, the appellant's counsel said that the partnership business was operated in the same manner as it had been run prior to the creation, on January 1, 1967, of the limited partnership. In response to Judge Shure's question of what counsel had to say with respect to unsecured loans made by appellant, as general partner, to himself or his other personal business ventures, counsel replied:

> " . . . I can only tell you that our testimony will show that Mr. Lust has conducted this business on the same basis that the Sydney Lust Theatres have been conducted since time immemorial."

Counsel argued that the father-mother-son relationship created a unique situation which underlaid the borrowing of money by appellant. During opening argument, however, counsel conceded that the appellant had borrowed money without giving a note, establishing terms for repayment, or giving security, but asserted that this was a long-established manner of operating the business. We note that the partnership agreement did not authorize such loans.

While appellant's counsel was arguing before Judge Shure the judge said, "Let's dissolve the partnership." The record reflects the following then occurred:

> "Mr. Frosh [appellant's attorney]: We have no objection to dissolving the partnership. We have no objection to that.
>
> The Court: Isn't that what they pray for?

---

**3.** Appellant filed a Counterclaim, Md. Rule 314 a, which is not pertinent to our discussion of this case.

> Mr. Frosh: We do not object to dissolving the partnership. It depends on the terms; and if you are going to appoint a receiver, then your Honor is throwing the baby out with the bath water. The minute they have a receiver, they have lost two assets of the partnership." [4]

Perspicuously, appellant's counsel acquiesced in the dissolution of the partnership. What he did not agree to, however, was the appointment of a receiver. Counsel's prior acknowledgment that his client had, in fact, made unsecured loans to himself, which were not authorized by the partnership agreement, was tantamount to a confession of mismanagement of the partnership by the appellant.[5] The unsecured loans seemingly placed the partnership assets in jeopardy and, thus, clearly called for the appointment of a receiver. Following the arguments of both counsel and a short recess in order for the judge to "read over" the agreement, the court stated:

> "Well now, gentlemen, this is a suit for dissolution of a partnership and for related relief including, or they ask the request for an imposition of a constructive trust and appointment of a receiver and an injunction, et cetera.
>
> The Defendant in his opening statement, by which he is bound, says that he is willing to have this partnership dissolved, so we now have determined that those parties want the partnership dissolved.
>
> The partnership agreement which is now in evidence as Plaintiff's Exhibit No. 1 provides how assets should be distributed in the event of a

---

4. We glean from this remark and other statements by counsel that the partnership leased two theatres which were productive and that the leases contained clauses which would allow termination of the lease upon the appointment of a receiver for the partnership.

5. The record discloses that the appellant's counsel, the day after the hearing, wrote to Judge Shure and attempted to retract his in-court admissions. We see no error in the court's declination to allow the retraction.

dissolution; and it seems to me that there is no useful purpose that can be served by taking any testimony now.

It seems to me that we are under the jurisdiction of the court, and that the court should sign an order dissolving the partnership, referring the matter to a court auditor, and signing an injunctive order, so that the general partner is restricted from either making any additional sales of assets or transfers, or dissipating the assets or anything of that sort.

I do not see any purpose in taking any testimony, under these circumstances.

Now, if it is true that the appointing of a receiver would be a detriment to the partnership, there is no use in appointing a receiver, because we can accomplish the same thing by having the matter referred to an auditor and signing an injunctive order, so that he would not be able to proceed any furt'ier in the dissipation of assets, or making any unsecured loans, or anything of that sort, in addition to which, the testimony of mother against son would seem to me to be just opening up additional wounds, which is not now necessary."

The next day, July 10, 1973, the judge signed an order (filed July 11, 1973) which (a) dissolved the Sidney Lust Theatres Limited Partnership and commanded distribution of assets in accordance with the "Articles of Partnership"; (b) referred the case to an auditor for statement of account upon dissolution; (c) enjoined the appellant to " . . . remain as manager of . . . [the] partnership during the period of dissolution . . ." with compensation deferred until the final report of the auditor; and (d) enjoined appellant from removing or secreting partnership assets.

On July 18, 1973, appellant moved for reconsideration of the court's order. Judge Shure, on January 30, 1974, determined that his original " . . . [o]rder must stand as the ultimate dissolution of the . . . partnership." Bernard Lust then appealed to this Court on February 15, 1974. Five days

later, appellant filed a "Motion for Leave to File An Appeal." Appellant also filed an appeal on February 28, 1974. We dismissed the appeal under the authority of Md. Rule 1035 b 1 in that there was no timely appeal taken from the order of July 10, 1973, and although the appeal from the order of January 30, 1974, was timely, the latter order was interlocutory in nature and, hence, not appealable under Md. Ann. Code, Courts and Judicial Proceedings Art. § 12-303.

The auditor filed his first report on March 21, 1974. In the report of the auditor, it was noted that appellant had not been fully cooperative and, as a result, the report would be incomplete. The following day, the court ordered that appellant appear before the auditor. Appellant filed "objections" to the first report. Before any ruling on these objections, the auditor filed, on November 8, 1974, his second report. Appellant excepted thereto. The court overruled all exceptions on January 30, 1975, and at the same time designated the auditor as a "Trustee," until his appointment as a "Trustee in Liquidation" of the partnership. The final appointment of the "Trustee in Liquidation" was deferred pending a consent to the appointment by Beta Corporation, the landlord of a property leased to the partnership. The obvious purpose in attempting to obtain Beta's consent was to avoid bringing into effect a covenant of the lease that provided for the lease's termination if the partnership was adjudicated to be bankrupt. Prior to Beta's answer, Bernard Lust noted an appeal from the order of January 30, 1975. We dismissed that appeal on the ground that it was interlocutory and, hence, not appealable under Courts Art. § 12-303. In the time period between the noting of an appeal to this Court, and our dismissal thereof, Beta Corporation, in their answer of March 7, 1975, and at a hearing on May 9, 1975, took the position that the appointment of a "Trustee in Liquidation" was equivalent to an adjudication of bankruptcy. Judge Shure made no ruling at that time, because he believed the appeal divested the trial court of jurisdiction.[6]

---

6. It is apparent from the transcript of Judge Shure's May 9, 1975, ruling that he was uncertain whether the January 30, 1975, order, then the subject

After we dismissed the appeal from the January 30, 1975, order, the court, on August 22, 1975, based on the argument before it on May 9, 1975, signed an "Order for Appointment of Trustee in Liquidation and Injunction." The order appointed the auditor-trustee as the "Trustee in Liquidation" and enjoined Beta Corporation from declaring a forfeiture under the lease. Bernard Lust once more appealed and once again the appellee moved to dismiss the appeal.[7] We denied the motion to dismiss for the reasons hereinafter explained.

In that connection, we deem it advisable to comment upon the nature of a "Trustee in Liquidation" *vis à vis* a receiver.

As a general rule, the appointment of a receiver is a matter resting within the sound discretion of the equity court. The discretion, however, is neither arbitrary nor absolute. IV J. Pomeroy, *A Treatise on Equity Jurisprudence* § 1333 (5th ed. 1941). It must be " . . . exercised with great circumspection. . . ." *Howeth v. Coulbourne Bros.*, 115 Md. 107, 121, 80 A. 916, 921 (1911).

By statute, in this State, the order appointing a receiver can be appealed, if the statutory requirement is satisfied, even though the order is interlocutory. Courts Art. § 12-303 (c) (4). IV Pomeroy § 1333, at 927, states:

> "In suits for a dissolution or winding up of a partnership, and even in some very special cases without a dissolution, the court may appoint a receiver of the firm assets, when there is any misconduct on the part of the defendants, and even, perhaps, where the partners themselves are wholly unable to agree as to the management of the property and the settlement of the partnership

---

of the pending appeal, would be deemed a final or interlocutory order by the appellate court. If it had been deemed final, then the appeal would have divested the trial court of jurisdiction. Since the order was deemed by us to be interlocutory in nature, Judge Shure did, in fact, have jurisdiction and could have entered a final order in the case. *See* Smiley v. Atkinson, 12 Md. App. 543 (1971), *aff'd*, 265 Md. 129 (1972). In any event, we note that Judge Shure was prudent in awaiting the action of the appellate court under the circumstances of this case.

7. Beta did not appeal.

affairs. The jurisdiction is, however, always exercised with great carefulness and caution."

A receiver appointed by the court is an officer of the court charged with the duty of receiving, collecting, caring for, administering, and disposing of the property of another " . . . under the orders of court . . . ." 1 R. Clark, *A Treatise on the Law and Practice of Receivers* § 11 (a) (3d ed. 1959). "A receiver is not a trustee." 1 Clark § 43, at 43. A receiver assumes no express or definite trust and only obeys the orders of the court which he represents. The powers of a receiver are not usually fixed by law alone but rather by the order of appointment. 1 Clark § 43, at 44. "Receivers are not strictly speaking trustees . . . because ordinarily without special statute receivers do not take title to the property. They do not derive their power and authority from the deed of trust or other agreement, but they derive their authority from the court." 1 Clark § 43 (a), at 45. Moreover, when a receiver is appointed, the property in his possession is in custodia legis. *Mathias v. Segaloff,* 187 Md. 690, 697, 51 A. 2d 654, 657 (1947); *Safe Dep. & Trust Co. v. Woodbridge,* 184 Md. 560, 570, 42 A. 2d 231, 235 (1945); *Williams v. Messick,* 177 Md. 605, 610, 11 A. 2d 472, 474, 129 A.L.R. 1035, 1038 (1940); *Glenn v. Gill,* 2 Md. 1 (1852). *See* 75 C.J.S. *Receivers* § 104 (1952); 1 Clark § 43, at 44; H. Ginsberg, *Equity Jurisprudence and Procedure in Maryland* 211 (1928); E. Miller, Jr., *Equity Procedure as Established in the Courts of Maryland* § 613 (1897).

A trustee may be appointed without the necessity of a court order, as *e.g.,* by a trust, will, mortgage, or deed. His powers usually stem from the instrument creating the position and not by a decree of court. The property in the hands of a trustee is not in custodia legis.[8] 1 Clark § 43, at 44.

While an officer of the court may be styled a "trustee," if the duties assigned to him by the court are those of a

---

8. We make clear that we are not, in this opinion, speaking of any powers, duties, or responsibilities of a trustee in a bankruptcy proceeding.

receiver, then the mere use of the title "trustee" does not alter the fact that he is a receiver. Paraphrasing William Shakespeare's *Romeo and Juliet* Act II, scene ii, line 43, a receiver by any other name is still a receiver. The use by the court of the title "Trustee in Liquidation" is an obvious attempt to circumvent the happening of a contingent event and does not diminish the duties of the receiver nor does it preclude the happening of any dormant condition that is awakened by the appointment. One who, by appointment of the court, undertakes the duties of a receiver is a receiver irrespective of whether the appointing court chooses to call the receiver by some other name. We hold that the trustee in liquidation, in the matter now before us, is a receiver within the meaning of the law of this State.

We turn now to a discussion of whether the trial court properly appointed a receiver in this case. We have already observed that a court of equity may appoint a receiver for the purpose of dissolving a limited partnership, *see* note 2 *supra*, and that counsel for the appellant, during his opening remarks, agreed that the partnership should be dissolved. Apparently, it was the mechanics of the dissolution that troubled counsel. The concession that the partnership should be dissolved was binding upon appellant. *Raitt v. Johns Hopkins Hosp.*, 22 Md. App. 196, 322 A. 2d 548 (1974), *rev'd on other grounds*, 274 Md. 489, 336 A. 2d 90 (1975); *McLhinney v. Lansdell Corp.*, 254 Md. 7, 254 A. 2d 177 (1969). *See also Goff v. Richards*, 19 Md. App. 250, 310 A. 2d 203 (1973); *McNatt v. Wabash Ry.*, 335 Mo. 999, 74 S.W.2d 625 (1934); 7 C.J.S. *Attorney and Client* § 100b (1937). Once appellant, through his attorney, expressed a desire that the partnership be dissolved, there was nothing further for the court to decide with respect to that particular issue. No question of a consent to jurisdiction is involved because the court clearly had jurisdiction under the statute. *See* note 2 *supra*. We conclude that Judge Shure properly ordered the dissolution of the partnership.

The next and last issue posed to us by the appellant is whether the chancellor erred in enjoining appellant to " . . . remain as manager of . . . [the] partnership during the

492

period of dissolution, with any compensation for his services to be delayed until the final report of the . . . auditor."

There is no evidence, in this case, that the appellant is devoting his full time to the position of manager of the partnership or that the injunction is in any way oppressive or operating so as to work a hardship on appellant. There is no evidence that the delay in paying appellant for his services places appellant in a financially unsound position or causes him any fiscal embarrassment. Under the particular circumstances of this case, we observe no error. The issuance of such an injunction, however, could, in some cases, work in such a manner as to indicate a form of involuntary servitude, and, thus, be unconstitutional.

We believe, however, the injunction issued in this case to be sound in that it was apparent to the court that the appellant was the only person who knew the day-to-day operations of the business, was familiar with the intricacies thereof, and was in a position to advise the "auditor" relative to the business. Because of the appellant's unique position, the court exercised sound discretion in issuing the injunction. Appellant is, of course, at liberty to seek dissolution of the injunction and reasonable compensation for his services.

We amend the order of August 22, 1975, by striking out the phrase "Trustee in Liquidation" wherever therein it appears and substituting therefor the word "Receiver."

*Order amended and as amended affirmed.*
*Costs to be paid by appellant.*