# ROBERT M. KLUCKHUHN ET UX. *v.* IVY HILL ASSOCIATION, INC.

[No. 1190, September Term, 1982.]

*Decided June 8, 1983.*

The cause was argued before MOYLAN, GARRITY and ADKINS, JJ.

*James G. Boss,* with whom were *Nancy E. James* and *Boss & Anderson, Chartered* on the brief, for appellants.

*Carlton M. Green* for appellee.

ADKINS, J., delivered the opinion of the Court.

The principal issue in this appeal is whether the appointment of a receiver suspends the running of the limitations period required to establish adverse possession with respect to real property that came within the receiver's charge after adverse possession had commenced. We hold that it does not.

On April 28, 1953, the Circuit Court for Prince George's County appointed Walter M. Cole "receiver, with full power to demand, sue for, collect and receive and take into his possession all the property and estate, including without limitation credits, monies, lands and tenements, books, papers, and choses of [*sic*] action, belonging to Ivy Hill Cemetery Company of Prince George's County...." The "lands" of

that corporation included property used as a cemetery. Mr. Cole qualified as receiver by posting the required bond.[1]

When the first receiver was appointed, the Kluckhuhns (the present appellants) owned a lot adjacent to the cemetery property. They had acquired this 3.69 acre lot in 1945 and constructed their home on it in 1946. From 1946, they occupied the lot all the way to a ravine which, according to the record, they thought was the proper boundary between their land and that of the cemetery.

The record contains indications that the boundary between Ivy Hill and the Kluckhuhns was less than perfectly established. A 1955 petition from receiver Cole to the circuit court recites that Cole had endeavored "since his appointment" to obtain a survey of the cemetery property, but as of that time, had been unable to do so. In any event, it was not until 1979 that Ivy Hill, reciting its capacity as "successor trustee", sued the Kluckhuhns in the Circuit Court for Prince George's County, claiming that the Kluckhuhns were trespassing on Ivy Hill's land. The Kluckhuhns' response included a claim that they had acquired title to the property in question by adverse possession. The chancellor agreed with the Kluckhuhns and by judgment and decree of April 9, 1981, found that they had "established title and ownership by adverse possession against any claim of [Ivy Hill] to property" described in the decree. Ivy Hill appealed.

In an unreported per curiam, *Ivy Hill Association, Inc. v. Kluckhuhn,* No. 596, Sept. Term, 1981, (January 5, 1982), we affirmed the chancellor's findings with respect to the elements of adverse possession. But we remanded the case

---

1. At some point in the proceeding and apparently as early as 1955, the receiver began referring to himself as a "trustee". The court appears to have done likewise, although sometimes using both designations in the same order. Along the way, various successor "trustees" were appointed, all apparently vested with essentially the same authority as had been granted to Mr. Cole in the 1953 order. Appellee Ivy Hill Cemetery Association, Inc., is the most recent successor trustee. The authority granted the officer, by whatever title he was from time to time designated, was that of a general equity receiver. "One who by appointment of the court undertakes the duties of a receiver is a receiver, irrespective of whether the appointing court chooses to call the receiver by some other name", such as "trustee". Lust v. Kolbe, 31 Md. App. 483, 491, 356 A.2d 592, 597 (1976). For purposes of this case, we shall treat Ivy Hill and its predecessor fiduciaries as receivers.

for a determination of the legal effect of the receivership, an issue raised belatedly in the lower court and not decided by it prior to the appeal. On remand, the chancellor found that the appointment of the receiver in 1953 placed the cemetery property "in *custodia legis*" and that "no person may interfere, without leave of court, with property held by a receiver. . . ." Quoting *Day v. Postal Tel. Co.,* 66 Md. 354, 368, 7 A. 608, 613 (1887) to the effect that the "strict rule forbidding the interference of a third party with the possession of the receiver, without leave of the court, applies without regard to the fact, whether such party claims paramount to or under the right which the receiver was appointed to protect", he concluded that the Kluckhuhns could not lawfully assert their adverse possession claim against the receivership property without leave of the court. Accordingly, he denied leave to acquire title to the property by adverse possession, and reversed his earlier finding that they owned it by adverse possession. This time, the Kluckhuhns have appealed. We, in turn, reverse. But before we address this issue, we must conduct a brief excursion through some aspects of the law of receivers.

There is no doubt that property in the hands of a receiver is *in custodia legis,* E. Miller, *Equity Procedure* § 613 at 720 (1897), and that "[t]he court never allows any person to interfere with money or property in the hands of its receiver, without its leave." *Id.* § 620 at 727. But the meaning of these rules, as applied to the instant case, must be ascertained by consideration of the nature and purposes of a receivership.

The function of a receiver is to receive and preserve the property or fund in litigation, *pendente lite. Tatlebaum v. Pantex Mfg. Corp.,* 204 Md. 360, 372, 104 A.2d 813, 820 (1954). He acts as agent for the court for those purposes, and is "an officer of the court charged with the duty of receiving, collecting, caring for, administering, and disposing of the property of another" under court supervision. *Lust v. Kolbe, supra,* 31 Md. App. at 490, 356 A.2d at 597.

Given these functions, the reason for the "strict rule forbidding the interference of a third party with the possession of the court" is clear:

> The reason of the rule ... is that when a court acquires jurisdiction of goods, chattels, or money, in one case, the orderly process of the court requires that it shall be permitted to determine the rights of the parties in that case without interference or interruption of a conflicting jurisdiction or of a separate and distinct action or proceeding. *Outerbridge Horsey Co. v. Martin,* 142 Md. 52, 55, 120 A. 235, 236 (1923).

*See Rouse v. Archer,* 149 Md. 470, 131 A. 753 (1926) (when property *in custodia legis,* tax collector may not sell property for overdue taxes, but must assert claim in the pending equity proceeding in order to avoid "separate and antagonistic sales [which] would seriously prejudice and complicate [the] proper disposition [of the property]." 149 Md. at 473, 131 A. at 754).

Thus, it has been said if a receiver is in possession of mortgaged property, the mortgagee must seek the court's permission to conduct a foreclosure sale. *Forest Lake Cemetery v. Baker,* 113 Md. 529, 77 A. 853 (1910). And ordinarily, a judgment creditor may not execute against property in the hands of a receiver. *Ellicott v. The United States Ins. Co.,* 7 Gill 307 (1848). Moreover, the receiver himself may not abandon receivership property without leave of court, *Mathias v. Segaloff,* 187 Md. 690, 51 A.2d 654 (1947). Nor may a corporation whose property is subject to receivership attempt to change the status of that property without court permission. *Day v. Postal Tel. Co., supra.*

Actions like those described are clearly inconsistent with the concept of receivership because they are calculated to interfere with the proper administration of the receivership property by the receivership court. But in this case we have no effort to abandon property by the receiver; the doctrine of adverse possession is not based upon any notion of abandonment by the party against whom title by adverse possession is asserted. In point of fact, in this case the receiver was attempting to assert title to property, not to abandon it. Nor do we have an effort by the corporation whose property

is subject to receivership to change the status of that property. The adverse possession claim here is based not on any corporate action taken by the Ivy Hill Cemetery Company of Prince George's County, but on conduct of the Kluckhuhns.

Furthermore, we do not question the undesirability of a mortgagee or judgment creditor attempting to sell for his own benefit and for the satisfaction of his particular indebtedness some portion of the receivership property. Particularly when there is another remedy available, such as filing a claim for money in the receivership case, it is reasonable to prevent mortgagors, judgment creditors, or tax collectors from attempting to dispose of receivership property by unilateral action and without court permission.

But that is not what was attempted here. In this case, the receiver itself — Ivy Hill — in an appropriate, albeit belated attempt to secure possession of what it claimed was receivership property, sued the Kluckhuhns. It needed no leave of court to file suit, since the original receivership order gave the receiver the power to sue. All the Kluckhuhns did was assert a defense to that suit, based on the applicable statute of limitations, Courts and Judicial Proceedings Art., § 5-103. When a receiver asserts a claim, limitations normally may be asserted as a defense. *Williams v. Taylor,* 99 Md. 306, 57 A. 641 (1904). Moreover, the suit by the receiver in this case, like the mortgage foreclosure in *Forest Lake Cemetery Company v. Baker, supra,* was in the very same court in which the receivership was pending. In *Forest Lake,* the Court of Appeals said "the sales were reported to the Court having possession and jurisdiction over the property [by virtue of the receivership], and the orders of the Court ratifying the sales are just as binding as they would have been if that Court had, prior to the sales, granted leave to the [mortgagees] to sell the property." 113 Md. at 540, 77 A. at 857.

We think that language applies here, and is controlling on the issue of interference with receivership property without leave of court. It is also dispositive of this case unless, as Ivy Hill contends, the statute of limitations was tolled by the

appointment of the receiver in 1953, and by the continuation of the receivership ever since.

That issue might seem to be controlled by *Williams v. Taylor, supra,* which held that the statute of limitations with respect to suit on a debt was a good defense in an action by a receiver for a money judgment. Indeed, as long ago as 1826, Chancellor Bland wrote that "it [the appointment of a receiver] will not even prevent the running of the statute of limitations." *Williamson v. Wilson,* 1 Bland 418, 421 (1826). This appears to be the general rule. R. Clark, *A Treatise on the Law and Practice of Receivers,* §§ 268.1 and 666.3 (3d ed. 1959); 51 Am. Jur. 2d *Limitation of Actions,* § 173; 54 C.J.S. *Limitation of Actions,* § 249 (c); Annot. 21 A.L.R. 961 (1922).

Ivy Hill, however, argues that the general rule should not apply when the effect of application of the statute of limitations is to confer title on a claimant by adverse possession. We disagree.

It is true that in most cases involving limitations, the effect of the statutory bar is to prevent suit to recover monetary damages against a defendant. In an adverse possession case, the effect of the statutory bar is to transfer title to the adverse possessor. But the purpose of statutes of limitation is the same in both situations. They are statutes of repose, intended to prohibit actions on stale claims. Note, 20 Md. L. Rev. 170 (1960). As the Statute of James I, c. 16 [2] put it, the statute was intended "For quieting of Mens Estates and avoiding of Suits. . . ." 2 *Alexander's British Statutes* 599 (Coe ed. 1912). The fact that the successful invocation of this statute results in a transfer of title to land does not affect the public policy underlying all statutes of limitations. We perceive no reason why that public policy should not apply equally against real property as against monetary claims in the hands of a receiver.

In this case, the statute had begun to run before the receiver was appointed. A receiver takes property subject to

---

2. The predecessor, in part, for § 5-103 of the Courts Article.

claims that existed against it prior to the receivership. *Forest Lake Cemetery Co. v. Baker, supra.* Generally, a disability that occurs after the statute has started to run will not toll the statute. *Gump v. Sibley,* 79 Md. 165, 28 A. 977 (1894). It has been held that for purposes of this rule the appointment of a receiver is indistinguishable from a disability, and will not toll the statute. *Nicholas v. Salisbury Hardware & Furniture Co.,* 248 N.C. 462, 103 S.E.2d 837 (1958). Here, the receiver had authority to sue from the date of his qualification. He could sue on behalf of the owner of the receivership property. Md. Rule 203 b (7). Despite his early uncertainty because of lack of a survey of the cemetery property, no suit was brought until 1979. It is not the authority to sue but the filing of suit that tolls the statute. *Williams v. Taylor, supra.* The statute was not tolled by appointment of the receiver, and he waited too long to bring his action. *Houston Oil Co. of Texas v. Dowden,* 202 F. 714 (5th Cir. 1913); *Nicholas v. Salisbury Hardware & Furniture Co., supra; Houston Oil Co. of Texas v. Brown,* 202 S.W. 102 (Tex. Civ. App. 1918), *cert. den.* 250 U.S. 659 (1919); *see Hayes v. Armstrong,* 145 Md. 268, 125 A. 610 (1924) (limitation on enforcement of mechanics lien).

Ivy Hill's final contention is that adverse possession could not apply in this case because the property was in the possession of the court. We are aware that limitations do not normally run against the State or against a municipality. *Siejack v. Baltimore,* 270 Md. 640, 313 A.2d 843 (1974); *Baltimore v. Chesapeake Marine Railway Co.,* 233 Md. 559, 197 A.2d 821 (1964); *Ulman v. Charles St. Ave. Co.,* 83 Md. 130, 34 A. 366 (1896). But the basis for this doctrine is that "land held by a municipality in its governmental capacity (as opposed to a proprietary or business capacity) and therefore held in trust for the public . . . may not be acquired by adverse possession. . . ." *Baltimore v. Chesapeake Marine Railway Co., supra,* 233 Md. at 572, 197 A.2d at 827. A receiver, even when he is a state official, does not possess property in a sovereign capacity or in trust for the public. *Rohrig v. Whitney,* 234 Iowa 435, 12 N.W.2d 866 (1944). Nor

does a receivership court possess receivership property in that capacity or for that purpose. The appointment of a receiver does not, alone, divest anyone of the possession of property. E. Miller, *Equity Procedure, supra,* § 616 at 723. The holding, by the receiver and by the court, is for the benefit of those ultimately entitled to it. *Day v. Postal Tel. Co., supra. Bodman v. John Murphy & Co.,* 35 Md. 154 (1872). "The holding of the receiver, is the holding of the court for him from whom the possession was taken." *Williamson v. Wilson, supra,* 1 Bland at 421. In other words, neither the court nor the receiver, in a receivership case, is asserting public rights on behalf of the people of the State or municipality. Rather, the assertion is of "merely private rights on behalf of a limited group." *Goldberg v. Howard County Welfare Board,* 260 Md. 351, 358, 272 A.2d 397, 401 (1971). This being so, there is no reason why limitations should not be applied in favor of the Kluckhuhns in this case.

For the reasons stated, we reverse the judgment of the Circuit Court for Prince George's County and remand this case for entry of judgment for the Kluckhuhns, consistent with the court's 1981 decree.[3]

> *Judgment reversed.*
> *Case remanded for entry of judgment not inconsistent with this opinion.*
> *Costs to be paid by appellee.*

---

**3.** The result would be the same were Ivy Hill a trustee and not a receiver; see n. 1, supra, and Stoll v. Smith, 129 Md. 164, 98 A. 530 (1916).